T.C. Memo. 2005-95

UNITED STATES TAX COURT

NANCY J. VINCENT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13470-03.               Filed May 3, 2005.

<u>John F. Sherwood, Sr.</u>, for petitioner.

<u>Jean Song</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Respondent determined a $161,940 deficiency in petitioner's 1998 income tax.  Following trial of this matter, we must decide as to 1998:

1.   Whether $240,000 received by petitioner in settlement of an employment discrimination lawsuit (lawsuit) is excludable

from her income under section 104(a)(2).[1]  We hold that it is not; and

2.    whether respondent properly determined that $198,000 received by petitioner's attorney was income to petitioner.  We hold that he did.

FINDINGS OF FACT

Some facts were stipulated.  We incorporate herein by this reference the parties' stipulation of facts and the exhibits submitted therewith.  We find the stipulated facts accordingly. Petitioner resided in Laughlin, Nevada, when this petition was filed.

Petitioner began working for Whittier Trust Co. (Whittier) as vice president and director of client administration in October 1991.  After developing symptoms in 1992, petitioner was diagnosed with active peptic ulcer disease on October 29, 1993. Petitioner was advised that high stress would exacerbate her condition, and she therefore requested a 4-day workweek at or around the end of 1993.  Michael Casey (Casey), the president of Whittier, changed her work schedule to a 4-day workweek as a reasonable accommodation of her disability (reasonable accommodation).  Casey circulated a company-wide memorandum to this effect on March 7, 1994.

---

[1] Unless otherwise noted, section references are to the applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

Subsequently, relations deteriorated between petitioner and Whittier. On May 12, 1994, Casey, acting on behalf of Whittier, sent her a notice of disciplinary action which questioned her honesty because, it alleged, she had inappropriately accepted gifts from clients. On December 20, 1994, she received an unfavorable performance appraisal repeating in relevant part many of the allegations set forth in the previous notice of disciplinary action. On March 20, 1995, she was placed on probation for 6 months. On the following day, March 21, 1995, she was returned to her previous 5-day work schedule.

On April 19, 1995, petitioner was instructed by her doctor, Sylvia Preciado, M.D. (Preciado), to remain off work for 4 weeks because of increased symptomatic complaints related to her gastric ulcer. A second doctor, Ronald P. Olah, M.D., instructed petitioner on May 26, 1995, that she should not return to work at that time. By June 20, 1995, her condition was improving, and Preciado advised Whittier that she could return to work on September 10, 1995. On August 1, 1995, Whittier terminated petitioner, citing as cause her disability leave.

Petitioner filed the lawsuit against Whittier, Casey, and other defendants in the Los Angeles, California, Superior Court, alleging causes of action under various State and Federal laws, including one for intentional infliction of emotional distress. Petitioner voluntarily dismissed with prejudice some of those

causes of action (including the one for intentional infliction of emotional distress), and the court dismissed others pursuant to a motion by Whittier for summary adjudication. One cause of action remained for trial; namely, petitioner's claim against Whittier under California's Fair Employment and Housing Act (FEHA), Cal. Govt. Code sec. 12900 et seq. She alleged that, prior to and at the time of her termination, she had a disability (i.e., ulcers) within the meaning of FEHA, that Whittier knew of this condition, and that Whittier wrongfully terminated her. As a direct and proximate result of Whittier's actions, petitioner alleged, she suffered lost wages and emotional distress. She did not allege in the FEHA cause of action that Whittier caused or exacerbated her ulcer condition, and she voluntarily dismissed with prejudice any such claims in her other causes of action.

At trial of her lawsuit against Whittier, petitioner presented facts to support the allegations in her complaint. She presented the testimony of economist Peter Formuzis, Ph.D., who testified that as a result of Whittier's actions, petitioner had lost $161,817 in wages and benefits as of the time of trial, and that she would lose a net present value of up to $235,912 in future wages as a result of the discrimination, for a total economic loss of up to $397,729. At the conclusion of the trial, the jury was given a special verdict form with the following nine questions.

(1) Did plaintiff's ulcer condition substantially limit a major life activity in March 1994?

(2) Did defendant know as of March 1994, that plaintiff was physically disabled due to an ulcer condition?

(3) Did plaintiff, in March 1994, request a reasonable accommodation for physical disability based on an ulcer condition?

(4) Did defendant reduce plaintiff's workweek from 5 days a week to 4 days a week in March 1994 because of a physical disability due to an ulcer condition?

(5) Did plaintiff's ulcer condition substantially limit a major life activity in March 1995?

(6) Did defendant know or should it have known, as of March 1995, that plaintiff was physically disabled due to an ulcer condition?

(7) Did defendant remove plaintiff's reasonable accommodation, if any, for a physical disability based on an ulcer condition when it reinstated her to a 5-day workweek in March 1995?

(8) What amount of damages, if any, is plaintiff entitled to recover?

(9) Did plaintiff prove, by clear and convincing evidence, that defendant acted in a malicious or oppressive manner toward her?

The jury answered the first seven questions in the affirmative and awarded petitioner $400,000 in damages without specifying the special and/or general damage(s) to which they related. The jury thus found as facts that Whittier was aware of petitioner's ulcer condition, knew that she was physically disabled by this condition, and nonetheless removed her reasonable accommodation when it reinstated her 5-day workweek in March 1995. The jury answered the ninth question in the negative. Upon motion by petitioner's attorney, the court awarded him $184,350.76 in attorney's fees and costs pursuant to Cal. Govt. Code sec. 12965(b). Petitioner's total recovery, inclusive of attorney's fees and costs, was $584,350.76.

Both parties to the lawsuit ascribed error to the judgment and appealed. The case was settled in or around December 1997, while the appeal was pending, for a lump sum of $510,000. Pursuant to this settlement agreement, petitioner received $30,000 in 1997 for back wages and fringe benefits, $30,000 in 1998 for back wages and fringe benefits, $12,000 in 1997 for attorney's fees, $198,000 in 1998 for attorney's fees, and $240,000 in 1998 for "personal injuries and emotional distress" arising from the ulcer. Petitioner reported the $30,000 she received in 1998 on her income tax return and paid the taxes

due.[2]  Petitioner did not report on her 1998 income tax return
the $198,000 received for her attorney's fees and costs, nor did
she report the $240,000 received under the settlement agreement
"for personal injuries and emotional distress".

As part of this settlement, Whittier insisted that the
agreement contain a paragraph disclaiming any liability for its
actions and another paragraph requiring petitioner to indemnify
Whittier in the event her tax treatment of the settlement
proceeds was challenged by the Commissioner.  Petitioner had a
contingent fee agreement with her attorney whereby she agreed to
pay a percentage of any recovery to him as compensation for his
services.  In the event attorney's fees were awarded by a court,
however, that award would constitute her attorney's sole right to
recovery pursuant to the agreement.

On May 20, 2003, respondent issued a notice of deficiency to
petitioner determining that petitioner should have included as
ordinary income for 1998 her $438,000 of damages as it was not
excluded from gross income by section 104(a)(2).

OPINION

Petitioner bears the burden of proving by the introduction
of probative evidence that the amount set forth in the notice of

---

[2] Petitioner's 1997 taxable year is not before us, and we do
not consider it.

deficiency is wrong. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).[3]

I.  Settlement Was Not Made "On Account Of" Physical Injuries

We must decide whether the $240,000 petitioner received in 1998 was properly excluded from her gross income as damages received "on account of personal physical injuries or physical sickness". Sec. 104(a)(2).[4]

Section 61, which mandates that gross income includes all income from whatever source derived absent a specific statutory exclusion, is to be broadly construed. Commissioner v. Glenshaw

---

[3] Sec. 7491(a) was added to the Internal Revenue Code by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726, effective for court proceedings arising from examinations commencing after July 22, 1998. Sec. 7491(a)(1) provides that the burden of proof shifts to the Commissioner in specified circumstances. Petitioner makes no argument that sec. 7491(a)(1) applies to this case, and we conclude that it does not. See, e.g., sec. 7491(a)(2). As relevant herein, sec. 7491(a)(2) provides that sec. 7491(a)(1) shall apply with respect to an issue only if "the taxpayer has complied with the requirements under this title to substantiate any item" and "the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Petitioner has not produced evidence to establish that any of these requirements are met.

[4] We apply sec. 104(a)(2) as amended in 1996 by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838, effective generally for amounts received after Aug. 20, 1996. That amendment, in relevant part, added the modifier "physical" after "personal" and before "injuries", to clarify that amounts received on account of personal injuries must be received for physical injuries and not solely for emotional distress.

Glass Co., 348 U.S. 426, 430 (1955).  Statutory exclusions from gross income are construed narrowly.  See, e.g., O'Gilvie v. United States, 519 U.S. 79 (1996); Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Under section 104(a)(2), settlement proceeds are excludable from gross income to the extent:  (1) The underlying cause of action is based upon tort or tort-type rights, and (2) the proceeds were received on account of "personal physical injuries" or "physical sickness".  See Commissioner v. Schleier, supra at 333-334 (analyzing section 104(a)(2) before its amendment in 1996, which added the restrictive modifier "physical" to limit the scope of "personal injuries"); Robinson v. Commissioner, 102 T.C. 116 (1994), affd. in part and revd. in part on an issue not relevant herein 70 F.3d 34 (5th Cir. 1995); Shaltz v. Commissioner, T.C. Memo. 2003-173; Henderson v. Commissioner, T.C. Memo. 2003-168.  Respondent concedes petitioner has satisfied the first part of the test and argues only that she has not satisfied the second.  We therefore decide whether any part of petitioner's settlement was received on account of "personal physical injuries" or "physical sickness".  Petitioner argues the $240,000 attributed in the settlement to "personal injuries and emotional distress" was so received.

We are not bound by a settlement agreement's characterization or division of settlement amounts, particularly

where it appears that one party may not have had a strong motivation to negotiate at arm's length as to the characterization and/or division of the settlement amounts. Hemelt v. United States, 122 F.3d 204, 208 (4th Cir. 1997); Dotson v. United States, 87 F.3d 682, 687 (5th Cir. 1996); Robinson v. Commissioner, supra at 127; Threlkeld v. Commissioner, 87 T.C. 1294, 1306-1307 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Fono v. Commissioner, 79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); see also Mitchell v. Commissioner, T.C. Memo. 1990-617, affd. without published opinion 992 F.2d 1219 (9th Cir. 1993). Our ultimate inquiry as to the character of a payment rests on the payor's intent or dominant reason for making the payment. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21; Metzger v. Commissioner, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988). For a payment to be excluded from gross income under section 104(a)(2), the payor must have intended to recompense the payee for a claim arising out of "personal physical injuries" or "physical sickness"; we may rely on the jury's verdict as the best evidence in determining a payor's intent for purposes of section 104(a)(2). See United States v. Burke, 504 U.S. 229, 234 (1992); Miller v.

<u>Commissioner</u>, T.C. Memo. 1993-49.  We do so here, noting the parties could have entered into a settlement only as to causes of action which were before the trial court.[5]

We find two facts determinative of the issue before us. First, after review of the special verdict form returned by the jury in the lawsuit, we do not find that the jury considered any claim by petitioner for "personal physical injuries" as a basis for the damage award.  Specifically, the jury was asked whether Whittier knew in 1994 and 1995 of petitioner's physical disability due to her ulcer condition, whether that condition substantially limited her activity in those years, whether she requested and received a shortened workweek as a reasonable accommodation for her injury before March 1995, and whether Whittier removed that accommodation in March 1995.  Nowhere in this special verdict was the jury asked whether Whittier's actions caused or exacerbated petitioner's ulcer disease.

While petitioner's medical condition was discussed at length in the lawsuit, including the introduction into evidence of photographs of her ulcers, this evidence merely established that she was "disabled" within the meaning of FEHA and therefore entitled to recover under that statute.  The jury was never asked

_____

[5] We note that the settlement document itself failed to state that the damages were being apportioned to "physical" personal injuries, ab initio depriving the settlement of sec. 104(a)(2) treatment under the 1996 amendment.

to, and did not, conclude Whittier's actions caused or exacerbated her ulcers and thereby inflicted upon her a physical injury. We find that the jury did not conclude Whittier's actions caused her any physical injury, and it awarded damages solely on the basis of Whittier's discriminatory actions which caused her lost wages and emotional distress, neither of which provide a basis for exclusion from gross income.[6] Thus, the jury verdict underlying the settlement does not support any apportionment of the settlement to "personal physical injury" damages excludable from gross income under section 104(a)(2).

Petitioner invites the Court to look solely at the settlement agreement to determine the characterization of the $240,000. We decline to do so. In Robinson v. Commissioner, supra, the taxpayers sued a state bank for failing to release a lien on their property. After the jury returned a verdict in their favor for approximately $60 million, including $6 million for lost profits, $1.5 million for mental anguish, and $50 million in punitive damages, the parties settled. The final judgment prepared by the parties allocated 95 percent of the settlement to mental anguish and 5 percent to lost profits. We

---

[6] Any damages received on account of emotional distress are excludable under sec. 104(a)(2) only to the extent that petitioner paid for medical care as to the emotional distress. See flush language of sec. 104(a). The record shows that petitioner's insurance paid her medical bills. Her emotional distress claims therefore do not give rise to excludable income under sec. 104(a)(2).

held that this allocation did not control the taxability of the settlement proceeds, noting that the settlement was "uncontested, nonadversarial, and entirely tax motivated." Robinson v. Commissioner, 102 T.C. at 129. We find this language equally applicable to the present case.[7]

While the underlying litigation was adversarial, once Whittier agreed to a settlement amount and negotiated the inclusion of the indemnification and release of liability clauses, the negotiation as to the characterization of the settlement proceeds ceased to be adversarial. Petitioner wanted a large portion of the recovery connected to a tortlike personal injury so that she could avoid taxes under section 104(a)(2).[8] Whittier, conversely, had no adversarial interest in the classification of the settlement proceeds as it was indemnified from any adverse tax consequences arising from the settlement.

---

[7] We also find Robinson v. Commissioner, 102 T.C. 116 (1994), affd. in part and revd. in part on an issue not relevant herein 70 F.3d 34 (5th Cir. 1995), inapt given the fact that it was decided under sec. 104(a)(2) as it read before the 1996 amendment. Before amendment, that section arguably included mental anguish as a personal injury. The section, as amended, explicitly limits its application to "physical" injuries, thereby excluding purely emotional distress.

[8] We note that the total amount of the court judgment was $584,350.76 (including court-awarded attorney's fees and costs). The matter was settled for $510,000. This $74,350.76 reduction is almost exactly 30 percent of $240,000, approximating petitioner's expected tax benefit from the settlement as structured.

Whittier's only interest in the settlement was resolving the matter and avoiding any future tax consequences from doing so. Once these concerns were met, Whittier ceased to be an active participant in the negotiations and, in effect, gave petitioner a green light to classify the settlement proceeds in whatever manner she desired.

That petitioner did so is evident from the disparity between her damages as argued at trial and the ultimate settlement. She documented actual lost wages of $161,817 and argued that she was entitled to up to $397,729 for total past and future lost wages and benefits, as well as emotional distress, on account of Whittier's removal of her accommodation. The jury awarded her $400,000. In the settlement, she allocated only $60,000 for past and future lost wages. This large reduction in the amount allocable to her lost wages (over $100,000 less than her documented loss of past wages and $335,000 less than the total of her lost past and future wages) was further tax advantaged to her by splitting the receipt of it between 2 years. Such tax planning, from which Whittier was insulated by the indemnification clause, is not the product of arm's-length negotiations between adversarial parties. See, e.g., Robinson v. Commissioner, supra at 127.

We are not persuaded by such agreements and look beyond the stated form of the settlement to its economic realities. Id.

Here, the non-arm's-length pretense reflected in the settlement agreement does not reflect the reality of the underlying lawsuit, which was submitted to the jury as a discrimination action rather than as one arising from "personal physical injuries" to petitioner.  We hold that none of the proceeds received under the settlement agreement fall within the reach of section 104(a)(2).[9]

II.  Portion of Settlement Proceeds Paid to Petitioner's Attorney

We decide whether sums paid to petitioner's attorney in lieu of a contingent fee and pursuant to a court award authorized by statute are includable within her gross income under section 61. This case was submitted and briefed before the United States Supreme Court's decision in Commissioner v. Banks, 543 U.S. ___, 125 S. Ct. 826 (2005).  In Banks, the Court held that, as a general rule, when a litigant's recovery constitutes income, the litigant's income includes any portion of the recovery paid to an attorney as a contingent fee.  In so doing, the Court explicitly declined to reach the issue of whether sums awarded to an attorney under a fee shifting statute are includable in the client's gross income.

---

[9] Even were we persuaded, which we are not, by petitioner's argument that some of her $240,000 was attributable to emotional distress, she would still not prevail.  As we pointed out supra note 6, petitioner's situation does not fall within the flush language of sec. 104(a)(2) that would allow her to exclude from her gross income any damages received for emotional distress.

Petitioner's contingent fee agreement with her attorney stated that the attorney would be entitled to a defined percentage of any recovery, unless, as occurred, the attorney received his fees and costs pursuant to a fee shifting statute. We are thus presented with the issue which the Court in Banks did not reach.[10]

We are not without guidance, however. The Court of Appeals for the Ninth Circuit, the court to which an appeal of this matter most likely lies, has held that a defendant's payment of a plaintiff/taxpayer's attorney's fees and costs pursuant to a fee shifting statute constitutes income to the taxpayer. Sinyard v. Commissioner, 268 F.3d 756 (9th Cir. 2001), affg. T.C. Memo. 1998-364. In Sinyard, the taxpayers signed with their attorney a contingent fee agreement similar to the one here. The settlement agreement apportioned some of the settlement so as to pay in full the attorney's fees and costs pursuant to the fee shifting provisions of 29 U.S.C. secs. 216(b) and 626(b). The court held that the apportioned funds were attributable to the taxpayers, who, in the court's words, "bound themselves to pay * * * [their attorneys] one-third of what they received. When * * * [the defendant] satisfied this obligation, the Sinyards were so much

---

[10] If the attorney's fees were received under the contingent fee agreement as opposed to the statute, Commissioner v. Banks, 543 U.S. ___, 125 S. Ct. 826 (2005), would control and the result would be the same.

the richer.  That they never laid hands on the money paid to the lawyers does not obliterate their constructive receipt."  Id. at 759.  We agree and hold likewise.[11]

We therefore sustain respondent's determination that the $198,000 paid to petitioner's attorney in 1998 should have been reported by her as income in 1998.[12]

_____

We have considered all of the parties' arguments and rejected those not discussed herein as meritless.  Accordingly,

Decision will be entered

under Rule 155.

_____

[11] Petitioner's reliance on Flannery v. Prentice, 26 Cal. 4th 572 (2001), is misplaced.  We are not bound by State law classifications as to the ownership of income.  Burnet v. Harmel, 287 U.S. 103 (1932).  Any contingent attorney's fees paid by petitioner on account of her (taxable) civil settlement would properly be income under Commissioner v. Banks, supra, and she may not escape this outcome by arguing that, because her attorney's fees and costs were awarded by a civil court pursuant to a statutory fee shifting provision, the income is properly attributable to her attorney.  See Sinyard v. Commissioner, 268 F.3d 756, 760 (9th Cir. 2001), affg. T.C. Memo. 1998-364.  We are not presented with, and do not decide, whether petitioner would have been taxed on the attorney's fees paid to her attorney, had she been represented by a nonprofit legal foundation.

[12] We note with approval respondent's concession that any sums payable to petitioner's attorney in 1998 are deductible by her in that year as a miscellaneous itemized deduction, subject to any applicable limitations.