# COMMISSIONER OF INTERNAL REVENUE *v.* BANKS

No. 03–892.   Argued November 1, 2004—Decided January 24, 2005*

---

*Together with No. 03–907, *Commissioner of Internal Revenue* v. *Banaitis,* on certiorari to the United States Court of Appeals for the Ninth Circuit.

KENNEDY, J., delivered the opinion of the Court, in which all other Members joined, except REHNQUIST, C. J., who took no part in the decision of the cases.

*David B. Salmons* argued the cause *pro hac vice* for petitioner in both cases. With him on the briefs were former *Solicitor General Olson, Acting Solicitor General Clement, Assistant Attorney General O'Connor, Deputy Solicitor General Hungar, Richard Farber,* and *Kenneth W. Rosenberg.*

*James R. Carty* argued the cause *pro hac vice* for respondent in No. 03–892. With him on the briefs were *Robert G. Wilson, Russell R. Young, Roger J. Jones, William J. Wise,* and *Glenn P. Schwartz. Philip N. Jones* argued the cause for respondent in No. 03–907. With him on the briefs were *Peter J. Duffy, Holly N. Mitchell,* and *Eric Schnapper.*†

---

†A brief of *amici curiae* urging reversal in both cases was filed for Gregg D. Polsky et al. by *Mr. Polsky, pro se,* and *Brant J. Hellwig, pro se.*

Briefs of *amici curiae* urging affirmance in both cases were filed for the Association of Trial Lawyers of America by *Jeffrey Robert White* and *Todd A. Smith;* for the Equal Employment Advisory Council by *Ann Elizabeth Reesman;* for the Lawyers' Committee for Civil Rights Under Law et al. by *Jerome B. Libin, Mary E. Monahan, Barbara R. Arnwine, Michael L. Foreman, Sarah C. Crawford, Audrey J. Wiggins, Ira A. Burnim, Vincent A. Eng, Dennis C. Hayes,* and *Dina R. Lassow;* for the Mountain States Legal Foundation et al. by *William Perry Pendley* and *J. Scott Detamore;* for the National Employment Lawyers Association et al. by *Douglas B. Huron, Victoria W. Ni, Richard A. Marcantonio, Richard A. Rothschild, Theodore M. Shaw, Norman J. Chachkin, Robert H. Stroup,*

JUSTICE KENNEDY delivered the opinion of the Court.

The question in these consolidated cases is whether the portion of a money judgment or settlement paid to a plaintiff's attorney under a contingent-fee agreement is income to the plaintiff under the Internal Revenue Code, 26 U. S. C. § 1 *et seq.* (2000 ed. and Supp. I). The issue divides the courts of appeals. In one of the instant cases, *Banks* v. *Commissioner*, 345 F. 3d 373 (2003), the Court of Appeals for the Sixth Circuit held the contingent-fee portion of a litigation recovery is not included in the plaintiff's gross income. The Courts of Appeals for the Fifth and Eleventh Circuits also adhere to this view, relying on the holding, over Judge Wisdom's dissent, in *Cotnam* v. *Commissioner*, 263 F. 2d 119, 125–126 (CA5 1959). *Srivastava* v. *Commissioner*, 220 F. 3d 353, 363–365 (CA5 2000); *Foster* v. *United States*, 249 F. 3d 1275, 1279–1280 (CA11 2001). In the other case under review, *Banaitis* v. *Commissioner*, 340 F. 3d 1074 (2003), the Court of Appeals for the Ninth Circuit held that the portion of the recovery paid to the attorney as a contingent fee is excluded from the plaintiff's gross income if state law gives the plaintiff's attorney a special property interest in the fee, but not otherwise. Six Courts of Appeals have held the entire litigation recovery, including the portion paid to an attorney as a contingent fee, is income to the plaintiff. Some of these Courts of Appeals discuss state law, but little of their analysis appears to turn on this factor. *Raymond* v. *United States*, 355 F. 3d 107, 113–116 (CA2 2004); *Kenseth* v. *Commissioner*, 259 F. 3d 881, 883–884 (CA7 2001); *Baylin* v. *United States*, 43 F. 3d 1451, 1454–1455 (CA Fed. 1995).

and *Thomas W. Osborne;* for the Taxpayers Against Fraud Education Fund by *Charles J. Cooper* and *Hamish P. M. Hume;* and for Kenneth W. Gideon et al. by *Mr. Gideon, pro se.*

Briefs of *amici curiae* were filed in both cases for the Oregon Trial Lawyers Association by *Richard S. Yugler;* for Stephen B. Cohen by *Mr. Cohen, pro se;* and for Charles Davenport by *Mr. Davenport, pro se.*

Other Courts of Appeals have been explicit that the fee portion of the recovery is always income to the plaintiff regardless of the nuances of state law. *O'Brien* v. *Commissioner*, 38 T. C. 707, 712 (1962), aff'd, 319 F. 2d 532 (CA3 1963) *(per curiam); Young* v. *Commissioner*, 240 F. 3d 369, 377–379 (CA4 2001); *Hukkanen-Campbell* v. *Commissioner*, 274 F. 3d 1312, 1313–1314 (CA10 2001). We granted certiorari to resolve the conflict. 541 U. S. 958 (2004).

We hold that, as a general rule, when a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee. We reverse the decisions of the Courts of Appeals for the Sixth and Ninth Circuits.

I

A. *Commissioner* v. *Banks*

In 1986, respondent John W. Banks, II, was fired from his job as an educational consultant with the California Department of Education. He retained an attorney on a contingent-fee basis and filed a civil suit against the employer in a United States District Court. The complaint alleged employment discrimination in violation of 42 U. S. C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. § 2000e *et seq.*, and Cal. Govt. Code Ann. § 12965 (West 1986). The original complaint asserted various additional claims under state law, but Banks later abandoned these. After trial commenced in 1990, the parties settled for $464,000. Banks paid $150,000 of this amount to his attorney pursuant to the fee agreement.

Banks did not include any of the $464,000 in settlement proceeds as gross income in his 1990 federal income tax return. In 1997 the Commissioner of Internal Revenue issued Banks a notice of deficiency for the 1990 tax year. The Tax Court upheld the Commissioner's determination, finding that all the settlement proceeds, including the $150,000 Banks had paid to his attorney, must be included in Banks' gross income.

The Court of Appeals for the Sixth Circuit reversed in part. 345 F. 3d 373 (2003). It agreed the net amount received by Banks was included in gross income but not the amount paid to the attorney. Relying on its prior decision in *Estate of Clarks ex rel. Brisco-Whitter* v. *United States*, 202 F. 3d 854 (2000), the court held the contingent-fee agreement was not an anticipatory assignment of Banks' income because the litigation recovery was not already earned, vested, or even relatively certain to be paid when the contingent-fee contract was made. A contingent-fee arrangement, the court reasoned, is more like a partial assignment of income-producing property than an assignment of income. The attorney is not the mere beneficiary of the client's largess, but rather earns his fee through skill and diligence. 345 F. 3d, at 384–385 (quoting *Estate of Clarks, supra,* at 857–858). This reasoning, the court held, applies whether or not state law grants the attorney any special property interest (*e. g.,* a superior lien) in part of the judgment or settlement proceeds.

## B. *Commissioner* v. *Banaitis*

After leaving his job as a vice president and loan officer at the Bank of California in 1987, Sigitas J. Banaitis retained an attorney on a contingent-fee basis and brought suit in Oregon state court against the Bank of California and its successor in ownership, the Mitsubishi Bank. The complaint alleged that Mitsubishi Bank willfully interfered with Banaitis' employment contract, and that the Bank of California attempted to induce Banaitis to breach his fiduciary duties to customers and discharged him when he refused. The jury awarded Banaitis compensatory and punitive damages. After resolution of all appeals and post-trial motions, the parties settled. The defendants paid $4,864,547 to Banaitis; and, following the formula set forth in the contingent-fee contract, the defendants paid an additional $3,864,012 directly to Banaitis' attorney.

Banaitis did not include the amount paid to his attorney in gross income on his federal income tax return, and the Commissioner issued a notice of deficiency. The Tax Court upheld the Commissioner's determination, but the Court of Appeals for the Ninth Circuit reversed. 340 F. 3d 1074 (2003). In contrast to the Court of Appeals for the Sixth Circuit, the *Banaitis* court viewed state law as pivotal. Where state law confers on the attorney no special property rights in his fee, the court said, the whole amount of the judgment or settlement ordinarily is included in the plaintiff's gross income. *Id.*, at 1081. Oregon state law, however, like the law of some other States, grants attorneys a superior lien in the contingent-fee portion of any recovery. As a result, the court held, contingent-fee agreements under Oregon law operate not as an anticipatory assignment of the client's income but as a partial transfer to the attorney of some of the client's property in the lawsuit.

## II

To clarify why the issue here is of any consequence for tax purposes, two preliminary observations are useful. The first concerns the general issue of deductibility. For the tax years in question the legal expenses in these cases could have been taken as miscellaneous itemized deductions subject to the ordinary requirements, 26 U. S. C. §§ 67–68 (2000 ed. and Supp. I), but doing so would have been of no help to respondents because of the operation of the Alternative Minimum Tax (AMT). For noncorporate individual taxpayers, the AMT establishes a tax liability floor equal to 26 percent of the taxpayer's "alternative minimum taxable income" (minus specified exemptions) up to $175,000, plus 28 percent of alternative minimum taxable income over $175,000. §§ 55(a), (b) (2000 ed.). Alternative minimum taxable income, unlike ordinary gross income, does not allow any miscellaneous itemized deductions. § 56(b)(1)(A)(i).

Second, after these cases arose Congress enacted the American Jobs Creation Act of 2004, 118 Stat. 1418. Section 703 of the Act amended the Code by adding § 62(a)(19). *Id.*, at 1546. The amendment allows a taxpayer, in computing adjusted gross income, to deduct "attorney fees and court costs paid by, or on behalf of, the taxpayer in connection with any action involving a claim of unlawful discrimination." *Ibid.* The Act defines "unlawful discrimination" to include a number of specific federal statutes, §§ 62(e)(1) to (16), any federal whistle-blower statute, § 62(e)(17), and any federal, state, or local law "providing for the enforcement of civil rights" or "regulating any aspect of the employment relationship . . . or prohibiting the discharge of an employee, the discrimination against an employee, or any other form of retaliation or reprisal against an employee for asserting rights or taking other actions permitted by law," § 62(e)(18). *Id.*, at 1547–1548. These deductions are permissible even when the AMT applies. Had the Act been in force for the transactions now under review, these cases likely would not have arisen. The Act is not retroactive, however, so while it may cover future taxpayers in respondents' position, it does not pertain here.

### III

The Internal Revenue Code defines "gross income" for federal tax purposes as "all income from whatever source derived." 26 U. S. C. § 61(a). The definition extends broadly to all economic gains not otherwise exempted. *Commissioner* v. *Glenshaw Glass Co.*, 348 U. S. 426, 429–430 (1955); *Commissioner* v. *Jacobson*, 336 U. S. 28, 49 (1949). A taxpayer cannot exclude an economic gain from gross income by assigning the gain in advance to another party. *Lucas* v. *Earl*, 281 U. S. 111 (1930); *Commissioner* v. *Sunnen*, 333 U. S. 591, 604 (1948); *Helvering* v. *Horst*, 311 U. S. 112, 116–117 (1940). The rationale for the so-called anticipatory assignment of income doctrine is the principle that gains should be taxed "to those who earned them," *Lucas, supra,*

at 114, a maxim we have called "the first principle of income taxation," *Commissioner* v. *Culbertson,* 337 U. S. 733, 739–740 (1949). The anticipatory assignment doctrine is meant to prevent taxpayers from avoiding taxation through "arrangements and contracts however skillfully devised to prevent [income] when paid from vesting even for a second in the man who earned it." *Lucas,* 281 U. S., at 115. The rule is preventative and motivated by administrative as well as substantive concerns, so we do not inquire whether any particular assignment has a discernible tax avoidance purpose. As *Lucas* explained, "no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew." *Ibid.*

Respondents argue that the anticipatory assignment doctrine is a judge-made antifraud rule with no relevance to contingent-fee contracts of the sort at issue here. The Commissioner maintains that a contingent-fee agreement should be viewed as an anticipatory assignment to the attorney of a portion of the client's income from any litigation recovery. We agree with the Commissioner.

In an ordinary case attribution of income is resolved by asking whether a taxpayer exercises complete dominion over the income in question. *Glenshaw Glass Co., supra,* at 431; see also *Commissioner* v. *Indianapolis Power & Light Co.,* 493 U. S. 203, 209 (1990); *Commissioner* v. *First Security Bank of Utah, N. A.,* 405 U. S. 394, 403 (1972). In the context of anticipatory assignments, however, the assignor often does not have dominion over the income at the moment of receipt. In that instance the question becomes whether the assignor retains dominion over the income-generating asset, because the taxpayer "who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants." *Horst, supra,* at 116–117. See also *Lucas,*

*supra,* at 114–115; *Helvering* v. *Eubank,* 311 U. S. 122, 124–125 (1940); *Sunnen, supra,* at 604. Looking to control over the income-generating asset, then, preserves the principle that income should be taxed to the party who earns the income and enjoys the consequent benefits.

In the case of a litigation recovery the income-generating asset is the cause of action that derives from the plaintiff's legal injury. The plaintiff retains dominion over this asset throughout the litigation. We do not understand respondents to argue otherwise. Rather, respondents advance two counterarguments. First, they say that, in contrast to the bond coupons assigned in *Horst,* the value of a legal claim is speculative at the moment of assignment, and may be worth nothing at all. Second, respondents insist that the claimant's legal injury is not the only source of the ultimate recovery. The attorney, according to respondents, also contributes income-generating assets—effort and expertise—without which the claimant likely could not prevail. On these premises respondents urge us to treat a contingent-fee agreement as establishing, for tax purposes, something like a joint venture or partnership in which the client and attorney combine their respective assets—the client's claim and the attorney's skill—and apportion any resulting profits.

We reject respondents' arguments. Though the value of the plaintiff's claim may be speculative at the moment the fee agreement is signed, the anticipatory assignment doctrine is not limited to instances when the precise dollar value of the assigned income is known in advance. *Lucas, supra; United States* v. *Basye,* 410 U. S. 441, 445, 450–452 (1973). Though *Horst* involved an anticipatory assignment of a predetermined sum to be paid on a specific date, the holding in that case did not depend on ascertaining a liquidated amount at the time of assignment. In each of the cases before us, as in *Horst,* the taxpayer retained control over the income-generating asset, diverted some of the income produced to another party, and realized a benefit by doing so. As Judge

Wesley correctly concluded in a recent case, the rationale of *Horst* applies fully to a contingent-fee contract. *Raymond* v. *United States*, 355 F. 3d, at 115–116. That the amount of income the asset would produce was uncertain at the moment of assignment is of no consequence.

We further reject the suggestion to treat the attorney-client relationship as a sort of business partnership or joint venture for tax purposes. The relationship between client and attorney, regardless of the variations in particular compensation agreements or the amount of skill and effort the attorney contributes, is a quintessential principal-agent relationship. Restatement (Second) of Agency § 1, Comment *e* (1957) (hereinafter Restatement); ABA Model Rules of Professional Conduct Rule 1.3, and Comment 1; Rule 1.7, and Comment 1 (2002). The client may rely on the attorney's expertise and special skills to achieve a result the client could not achieve alone. That, however, is true of most principal-agent relationships, and it does not alter the fact that the client retains ultimate dominion and control over the underlying claim. The control is evident when it is noted that, although the attorney can make tactical decisions without consulting the client, the plaintiff still must determine whether to settle or proceed to judgment and make, as well, other critical decisions. Even where the attorney exercises independent judgment without supervision by, or consultation with, the client, the attorney, as an agent, is obligated to act solely on behalf of, and for the exclusive benefit of, the client-principal, rather than for the benefit of the attorney or any other party. Restatement §§ 13, 39, 387.

The attorney is an agent who is dutybound to act only in the interests of the principal, and so it is appropriate to treat the full amount of the recovery as income to the principal. In this respect Judge Posner's observation is apt: "[T]he contingent-fee lawyer [is not] a joint owner of his client's claim in the legal sense any more than the commission salesman is a joint owner of his employer's accounts receivable."

*Kenseth*, 259 F. 3d, at 883. In both cases a principal relies on an agent to realize an economic gain, and the gain realized by the agent's efforts is income to the principal. The portion paid to the agent may be deductible, but absent some other provision of law it is not excludable from the principal's gross income.

This rule applies whether or not the attorney-client contract or state law confers any special rights or protections on the attorney, so long as these protections do not alter the fundamental principal-agent character of the relationship. Cf. Restatement § 13, Comment *b*, and § 14G, Comment *a* (an agency relationship is created where a principal assigns a chose in action to an assignee for collection and grants the assignee a security interest in the claim against the assignor's debtor in order to compensate the assignee for his collection efforts). State laws vary with respect to the strength of an attorney's security interest in a contingent fee and the remedies available to an attorney should the client discharge or attempt to defraud the attorney. No state laws of which we are aware, however, even those that purport to give attorneys an "ownership" interest in their fees, *e. g.*, 340 F. 3d, at 1082–1083 (discussing Oregon law); *Cotnam*, 263 F. 2d, at 125 (discussing Alabama law), convert the attorney from an agent to a partner.

Respondents and their *amici* propose other theories to exclude fees from income or permit deductibility. These suggestions include: (1) The contingent-fee agreement establishes a Subchapter K partnership under 26 U. S. C. §§ 702, 704, and 761, Brief for Respondent in No. 03–907, pp. 5–21; (2) litigation recoveries are proceeds from disposition of property, so the attorney's fee should be subtracted as a capital expense pursuant to §§ 1001, 1012, and 1016, Brief for Association of Trial Lawyers of America as *Amicus Curiae* 23–28, Brief for Charles Davenport as *Amicus Curiae* 3–13; and (3) the fees are deductible reimbursed employee business expenses under § 62(a)(2)(A) (2000 ed. and Supp. I), Brief for

Stephen B. Cohen as *Amicus Curiae*. These arguments, it appears, are being presented for the first time to this Court. We are especially reluctant to entertain novel propositions of law with broad implications for the tax system that were not advanced in earlier stages of the litigation and not examined by the Courts of Appeals. We decline comment on these supplementary theories. In addition, we do not reach the instance where a relator pursues a claim on behalf of the United States. Brief for Taxpayers Against Fraud Education Fund as *Amicus Curiae* 10–20.

## IV

The foregoing suffices to dispose of Banaitis' case. Banks' case, however, involves a further consideration. Banks brought his claims under federal statutes that authorize fee awards to prevailing plaintiffs' attorneys. He contends that application of the anticipatory assignment principle would be inconsistent with the purpose of statutory fee-shifting provisions. See *Venegas* v. *Mitchell*, 495 U. S. 82, 86 (1990) (observing that statutory fees enable "plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail"). In the federal system statutory fees are typically awarded by the court under the lodestar approach, *Hensley* v. *Eckerhart*, 461 U. S. 424, 433 (1983), and the plaintiff usually has little control over the amount awarded. Sometimes, as when the plaintiff seeks only injunctive relief, or when the statute caps plaintiffs' recoveries, or when for other reasons damages are substantially less than attorney's fees, court-awarded attorney's fees can exceed a plaintiff's monetary recovery. See, *e. g.*, *Riverside* v. *Rivera*, 477 U. S. 561, 564–565 (1986) (compensatory and punitive damages of $33,350; attorney's fee award of $245,456.25). Treating the fee award as income to the plaintiff in such cases, it is argued, can lead to the perverse result that the plaintiff loses money by winning the suit. Furthermore, it is urged that treating statutory fee awards as income to plaintiffs would

undermine the effectiveness of fee-shifting statutes in deputizing plaintiffs and their lawyers to act as private attorneys general.

We need not address these claims. After Banks settled his case, the fee paid to his attorney was calculated solely on the basis of the private contingent-fee contract. There was no court-ordered fee award, nor was there any indication in Banks' contract with his attorney, or in the settlement agreement with the defendant, that the contingent fee paid to Banks' attorney was in lieu of statutory fees Banks might otherwise have been entitled to recover. Also, the amendment added by the American Jobs Creation Act redresses the concern for many, perhaps most, claims governed by fee-shifting statutes.

\* \* \*

For the reasons stated, the judgments of the Courts of Appeals for the Sixth and Ninth Circuits are reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE took no part in the decision of these cases.