T.C. Memo. 2006-107

UNITED STATES TAX COURT

DEBORAH A. MESSINA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10926-04.                    Filed May 16, 2006.

Deborah A. Messina, pro se.

<u>Bradley C. Plovan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following deficiency in, and additions to, petitioner's Federal income tax (tax):

| Year | Deficiency | Sec. 6651(a)(1)[1] | Sec. 6651(a)(2) | Sec. 6654(a) |
|------|-----------|--------------------|-----------------|--------------|
|      |           | Additions to Tax   |                 |              |
| 1994 | $60,217   | $7,303.95          | $6,979.33       | $1,513.69    |

The issues remaining for decision are:[2]

(1) Is petitioner required to include in gross income for 1994 $170,000 paid during that year by the State of Maryland on account of her successful prosecution of a claim for wrongful discharge and back wages?  We hold that she is.

(2) Is petitioner required to include in gross income for 1994 wages totaling $24,170 paid during that year by the State of Maryland?  We hold that she is.

(3) Is petitioner required to include in gross income for 1994 wages totaling $6,227 paid during that year by Sportland Properties, Inc.?  We hold that she is.

(4) Is petitioner required to include in gross income for 1994 interest totaling $140 paid during that year by the Bank of Ocean City?  We hold that she is.

(5) Is petitioner liable for 1994 for the addition to tax under section 6651(a)(1)?  We hold that she is.

(6) Is petitioner liable for 1994 for the addition to tax under section 6654(a)?  We hold that she is.

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes that petitioner is not liable for 1994 for the addition to tax under sec. 6651(a)(2).

## FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

Petitioner's legal residence was in Berlin, Maryland, at the time she filed the petition.

Petitioner successfully prosecuted a claim for wrongful discharge and back wages (petitioner's claim) against the State of Maryland. Petitioner and the State of Maryland resolved petitioner's claim around the end of April 1994 when they entered into a release and settlement agreement (agreement). That agreement provided in pertinent part:

> **WHEREAS,** Deborah Messina and the State [of Maryland] desire to enter into a full and final resolution of the issues of the position to which Ms. Messina will be restored and the amount of back pay and benefits to be awarded, and to avoid litigation of those issues with its attendant expense and inconvenience to the parties;
>
> **NOW, THEREFORE,** it is hereby agreed between the parties that they shall enter into a full and final settlement of the issues of reinstatement and back pay and bene- fits and dispose completely of those issues, in consid- eration of the mutual promises and covenants contained herein and other good and valuable consideration as hereinafter described, the adequacy of which is hereby acknowledged. Accordingly, it is agreed as follows:
>
> 1. In full and complete settlement of these matters, the parties agree to abide by the provisions set forth in this agreement.
>
> 2. The State agrees to reinstate Deborah Messina, as of April 29, 1994, in the position of a Human Ser- vices Specialist IV, at Grade 15, Step 6, with the Wicomico County Department of Social Services.  * * *
>
> *       *       *       *       *       *       *

- 4 -

5.   The State agrees to contribute to Ms. Messina's pension retroactively for the time period from November 12, 1986 to April 29, 1994.

6.   For all purposes, including retirement and/or pension benefits, Ms. Messina's benefits will be computed as if she has been in continuous service with the State from her original entry on duty date.

7.   The State agrees to pay, and Deborah Messina agrees to accept, in full satisfaction of the back pay order, the amount of $170,000.00 less taxes due and owed to the State and federal governments based on information submitted by Deborah Messina in her W-4 Form.  The amount deducted for payment of taxes may be less than Ms. Messina's total income tax liability for 1994.

8.   The parties hereby expressly agree that each party shall bear its own attorneys' fees.

9.   It is hereby expressly agreed and understood that no party shall have the right to litigate any of the matters discussed in the agreement in any court or tribunal, unless this agreement is alleged to have been materially breached by the opposing party.  In that event the aggrieved party must give the other party thirty days notice of the alleged breach and the parties must attempt to resolve any disagreement before commencing any litigation.

10.   Deborah Messina agrees that she will, and hereby does, forever and irrevocably release and discharge the State and its officers, directors, employees, agents, successors, assigns, and representatives, from any and all claims, demands, charges, debts, defenses, actions, causes of action, obligations, damages, or liabilities, whatsoever, which she now has, or may have, in any way arising from her reinstatement in the aforementioned Human Services IV position, or the aforementioned back pay and leave amounts.

*     *     *     *     *     *     *

14.   The parties agree that this Agreement contains and comprises the entire agreement and understanding of the parties, that there are no additional promises or terms with the agreement between the par-

ties other than those contained herein; and that this Agreement shall not be modified except in writing, signed by each of the parties hereto.

\*       \*       \*       \*       \*       \*       \*

16. Deborah Messina has fully discussed the terms of this Agreement with her undersigned attorney and has fully reviewed them with her attorney. Based upon that review and discussion with her counsel, Deborah Messina hereby acknowledges that she fully and completely understands and agrees to the terms of this Agreement.

In anticipation of petitioner's signing the agreement, William Ober (Mr. Ober), petitioner's attorney, had discussions with a representative of the Office of the Attorney General of the State of Maryland (Maryland Attorney General) concerning Mr. Ober's proposal to allow petitioner to claim a higher number of exemptions in Form W-4, Employee's Withholding Allowance Certificate (Form W-4), in an effort to reduce significantly the amount of Federal and State tax that the State of Maryland was to withhold from the $170,000 that the State of Maryland agreed to pay to petitioner under the agreement. On April 26, 1994, that representative sent a letter to Mr. Ober (Maryland Attorney General's April 26, 1994 letter) with respect to Mr. Ober's proposal. That letter stated in pertinent part:

This is to confirm our conversation of 4/26/94 regarding your proposal to allow Mrs. Messina to claim a higher number of exemptions on her W-4 Form in order to substantially reduce the projected withholding of $60,136.

As we discussed, I spoke to Ellen Coffin of the [Maryland] Comptroller's Office who stated that a State employee may claim more exemptions than they actually

have.  The Comptroller's Office does not make an in-
quiry or judge the number of exemptions but does as a
matter of policy, forward on a quarterly basis, copies
of all W-4s that reflect over 10 exemptions to the
I.R.S.  Ms. Coffin further stated that the employee is
then subject to an inquiry from the I.R.S. that re-
quests that the employee state the basis for claiming
these exemptions on their W-4.

Based upon the above information you have stated
that your client intends to claim a higher number of
exemptions than she in fact has in order to substan-
tially reduce the projected withholding of $60,136.  In
your estimation, the number of exemptions will be well
above the 2 exemptions that she claimed prior to her
termination.  It is your opinion, based upon advice
from a tax expert, that the number will be legally
defensible because it reflects a good faith projection
of Mrs. Messina's tax liability.  Further, you have
stated that Mrs. Messina fully understands that her
claim may subject her to an inquiry by the I.R.S. and
that there may be negative tax consequences and/or
penalties because of her decision to claim higher
exemptions.  [Reproduced literally.]

After having received the Maryland Attorney General's April

26, 1994 letter, Mr. Ober sent to petitioner by facsimile a

memorandum dated April 28, 1994.  That memorandum stated in

pertinent part:

Per our telephone conversation of yesterday eve-
ning, enclosed please find a copy of the latest fax
transmittal from DHR's [Department of Human Resources
of the State of Maryland] attorney which includes a 2-
page letter [Maryland Attorney General's August 26,
1994 letter to Mr. Ober] and a 5-page Release and
Settlement Agreement [agreement].  If the agreement is
acceptable to you as is, please sign on the appropriate
line thereof (the bottom left of page 4 of the agree-
ment) and fax the page containing your signature back
to me.

The arrangement that I have with DHR is that you
are to report to work on the Eastern Shore tomorrow,
contingent upon receipt by DHR today of your faxed

signature on the agreement; if we have any changes to make in the agreement, we must do so by 2:30 pm today (because of my schedule). The check will be issued promptly upon execution of a W-4 by you, an event which cannot occur until I determine the exact amount of exemptions for you to claim. I am certainly motivated to make this determination ASAP; as we discussed yesterday, your faxing to me of your last pay stub reflecting year-to-date earnings and withholding will aid me in determining the correct number of exemptions to claim. Any delay in filling out the W-4 will delay the issuance of the settlement check, but will <u>not</u> delay your reporting to work, and will not delay the issuance of your first paycheck (if the W-4 is filled out prior to the end of the current pay period).

Please let this letter serve as written confirmation that both Saul and I will be at your complete disposal to resolve the tax situation, with no charge for our time. In other words, both Saul and I will spend as much time as is necessary, with no charge to you for our time, to minimize the income taxes you will have to pay to the IRS and State for the calendar years 1986-1994 inclusive.

After petitioner and a representative of the State of Maryland signed the agreement, the State of Maryland paid on a date not disclosed by the record around the end of April 1994 $170,000 ($170,000 settlement) to petitioner "less taxes due and owed to the State and federal governments based on information submitted by Deborah Messina in her W-4 Form", as required by paragraph 7 of the agreement. Under a contingency fee agreement with Mr. Ober that petitioner and Mr. Ober signed around April 6, 1994, petitioner paid him $84,500 out of the $170,000 settlement.

During 1994, the State of Maryland also paid wages totaling $24,170 to petitioner.

During 1994, Sportland Properties, Inc. (Sportland Proper-
ties) paid wages totaling $6,227 to petitioner.

During 1994, the Bank of Ocean City (Ocean City Bank) paid
interest totaling $140 to petitioner.

The State of Maryland reported to respondent in Form W-2,
Wage and Tax Statement (Form W-2), for 1994 that it paid to
petitioner during that year wages totaling $194,170 (i.e., the
$170,000 settlement and other wages totaling $24,170).

Sportland Properties reported to respondent in Form W-2 for
1994 that it paid to petitioner during that year wages totaling
$6,227.

Ocean City Bank reported to respondent in Form 1099-INT,
Interest Income, for 1994 that it paid to petitioner during that
year interest totaling $140.

Petitioner did not make any estimated tax payments with
respect to her taxable year 1994.  Nor did petitioner file Form
1040, U.S. Individual Income Tax Return (tax return), for that
year.[3]

Respondent issued a notice of deficiency (notice) to peti-
tioner for her taxable year 1994.  In that notice, respondent
determined that petitioner has total unreported income of
$200,537 for 1994 consisting of wages totaling $194,170 that the

_____

[3]Respondent has no record that petitioner filed a tax return
for her taxable year 1994.

State of Maryland paid to petitioner, wages totaling $6,227 that Sportland Properties paid to her, and interest totaling $140 that Ocean City Bank paid to her. In the notice, respondent also determined that petitioner is liable for 1994 for additions to tax under, inter alia, sections 6651(a)(1) and 6654(a), respectively.[4]

## OPINION

Petitioner bears the burden of proving that the determinations in the notice are erroneous.[5] Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

### $170,000 Settlement

It is not clear whether it is petitioner's position that none of the $170,000 settlement is includible in her gross income or that only the $84,500 contingency fee paid to Mr. Ober, her attorney, is not includible in her gross income. On brief, petitioner argues:

> Petitioner clearly did not <u>gain</u> anything from these
> funds; they were simply paid to the attorney, Mr. Ober,

---

[4]Respondent also determined in the notice that petitioner is liable for 1994 for the addition to tax under sec. 6651(a)(2). See <u>supra</u> note 2.

[5]Petitioner makes no argument under sec. 7491(a) or (c). Respondent's records show that on June 29, 1998, a substitute for return was posted to the account that respondent maintained with respect to petitioner for her taxable year 1994. We find that respondent's examination of petitioner's taxable year 1994 began before July 23, 1998, and that sec. 7491 is not applicable in the instant case. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

THROUGH HER.  The check for these funds was issued
jointly to Petitioner AND Mr. Ober; Petitioner did not
have exclusive control of these funds at any time.
Further, Petitioner relied upon reasonable sources
including the Attorney General's Office and the Comp-
troller, both of the State of Maryland, and followed
their instructions regarding how to "pass through"
these funds to Mr. Ober and not be responsible for
taxes on the non-income (reference Exhibit 6-P).  For
all the above reasons, these funds cannot be considered
as income and must be excluded from inclusion in the
Petitioner's Gross Income figure for 1994.  * * *
[Reproduced literally.]

On the record before us, we find that petitioner has failed
to carry her burden of showing that the $170,000 settlement was
paid jointly to petitioner and Mr. Ober.[6]  In any event, the

------

[6]On the record before us, we further find that petitioner
has failed to carry her burden of showing that Exhibit 6-P to
which petitioner refers on brief and which is part of the record
in this case contained "instructions regarding how to 'pass
through' these funds to Mr. Ober and not be responsible for taxes
on the non-income".  The exhibit in question is the Maryland
Attorney General's April 26, 1994 letter to Mr. Ober.  That
letter stated in pertinent part:

> This is to confirm our conversation of 4/26/94
> regarding your proposal to allow Mrs. Messina to claim
> a higher number of exemptions on her W-4 Form in order
> to substantially reduce the projected withholding of
> $60,136.
>
> As we discussed, I spoke to Ellen Coffin of the
> [Maryland] Comptroller's Office who stated that a State
> employee may claim more exemptions than they actually
> have.  The Comptroller's Office does not make an in-
> quiry or judge the number of exemptions but does as a
> matter of policy, forward on a quarterly basis, copies
> of all W-4s that reflect over 10 exemptions to the
> I.R.S.  Ms. Coffin further stated that the employee is
> then subject to an inquiry from the I.R.S. that re-
> quests that the employee state the basis for claiming
> these exemptions on their W-4.

(continued...)

parties stipulated that "Petitioner was paid $170,000 from [sic] the State of Maryland on account of her successful prosecution of a claim for wrongful discharge and back wages."

Gross income means all income from whatever source derived. Sec. 61(a). On the record before us, we find that petitioner has failed to carry her burden of establishing that the entire amount of the $170,000 settlement should be excluded from her gross income. On that record, we further find that petitioner has failed to carry her burden of establishing that the $84,500 contingency fee that she paid to Mr. Ober out of the $170,000 settlement should be excluded from her gross income. Commissioner v. Banks, 543 U.S. 426, 430 (2005) (holding that, as a general rule, where a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to

---

6(...continued)

Based upon the above information you have stated that your client intends to claim a higher number of exemptions than she in fact has in order to substantially reduce the projected withholding of $60,136. In your estimation, the number of exemptions will be well above the 2 exemptions that she claimed prior to her termination. It is your opinion, based upon advice from a tax expert, that the number will be legally defensible because it reflects a good faith projection of Mrs. Messina's tax liability. Further, you have stated that Mrs. Messina fully understands that her claim may subject her to an inquiry by the I.R.S. and that there may be negative tax consequences and/or penalties because of her decision to claim higher exemptions. [Reproduced literally.]

the attorney as a contingency fee).

On the record before us, we find that petitioner is required to include in her gross income the entire amount of the $170,000 settlement.

Petitioner further argues that if the Court were to conclude that the $170,000 settlement is includible in her gross income, such settlement

> would be income that should be claimed in each of the eight tax years used in the computation and justifica- tion of these funds, the period during which they were earned. * * * [Reproduced literally.]

As we understand petitioner's argument, the $170,000 settlement should be taken into account over an eight-year period, the approximate period of years to which such settlement for back wages pertained.

Section 451(a) provides in pertinent part:

SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.

> (a) General Rule.--The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing tax- able income, such amount is to be properly accounted for as of a different period.

Section 451(b) through (g) and the regulations thereunder pre- scribe special rules setting forth exceptions to the general rule in section 451(a). None of those special rules applies in the instant case. For the year at issue, petitioner was, and was required to be, on the cash method of accounting.

On the record before us, we find that petitioner is required to include the entire amount of the $170,000 settlement in her gross income for her taxable year 1994.

Other Income

The parties stipulated that, in addition to the $170,000 settlement that the State of Maryland paid to petitioner during 1994, during that year: (1) The State of Maryland also paid her wages totaling $24,170; (2) Sportland Properties paid her wages totaling $6,227; and (3) Ocean City Bank paid her interest totaling $140. Petitioner advances no argument as to why such wages and interest should be excluded from her gross income for 1994.

On the record before us, we find that petitioner is required to include in her gross income for her taxable year 1994 the additional wages totaling $24,170 that the State of Maryland paid to her, the wages totaling $6,227 that Sportland Properties paid to her, and the interest totaling $140 that Ocean City Bank paid to her.

Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a tax return on the date prescribed for filing, unless the taxpayer proves that such failure to file was due to reasonable cause and not willful neglect.

We have found that petitioner did not file a tax return for her taxable year 1994. In so finding, we rejected petitioner's self-serving and uncorroborated testimony that Mr. Ober filed a tax return for that year on behalf of her.[7]

On the record before us, we find that petitioner has failed to carry her burden of showing that her failure to file a tax return for her taxable year 1994 was due to reasonable cause and not due to willful neglect. On that record, we further find that petitioner is liable for her taxable year 1994 for the addition to tax under section 6651(a)(1).

Section 6654(a)

Section 6654(a) imposes an addition to tax in the case of an underpayment of estimated tax by an individual.

We have found that petitioner did not make any estimated tax payments for her taxable year 1994.[8] Although it is not altogether clear, it appears that petitioner may be arguing that she is not liable for 1994 for the addition to tax under section 6654(a) because she is not required to include in gross income

---

[7]Although petitioner claimed at trial that she had a copy of the tax return that Mr. Ober allegedly filed on her behalf for her taxable year 1994, petitioner did not proffer such copy to the Court. Nor did petitioner provide such copy to respondent. Moreover, respondent has no record that petitioner filed a tax return for her taxable year 1994. In fact, respondent prepared a substitute for return for that year.

[8]Our finding about petitioner's failure to make any estimated tax payments for 1994 was based on the parties' stipulation.

for that year any of the $170,000 settlement.  We have found that petitioner is required to include the entire amount of that settlement in gross income for her taxable year 1994.

On the record before us, we find that petitioner has failed to carry her burden of showing that any of the exceptions in section 6654(e) applies.[9]  On that record, we further find that petitioner is liable for her taxable year 1994 for the addition to tax under section 6654(a).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concession of respondent,

<u>Decision will be entered for respondent except with respect to the addition to tax under section 6651(a)(2)</u>.

_____

[9]Petitioner failed to present evidence, and does not argue, that any of the exceptions in sec. 6654(e) applies.