## *PRELIMINARY PRINT*

## VOLUME 604 U. S. PART 1

PAGES 321–333

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

FEBRUARY 26, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# DEWBERRY GROUP, INC., fka DEWBERRY CAPITAL CORP. *v.* DEWBERRY ENGINEERS INC.

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23–900.   Argued December 11, 2024—Decided February 26, 2025

The federal Lanham Act provides for a prevailing plaintiff to recover the "defendant's profits" deriving from improper use of a mark.   15 U. S. C. § 1117(a).   Dewberry Engineers successfully sued Dewberry Group—a competitor real-estate development company—for trademark infringement under the Lanham Act.   Dewberry Group provides services needed to generate rental income from properties owned by separately incorporated affiliates.   That income goes on the affiliates' books; Dewberry Group receives only agreed-upon fees.   And those fees are apparently set at less than market rates—the Group has operated at a loss for decades, surviving only through cash infusions by John Dewberry, who owns both the Group and the affiliates.   To reflect that "economic reality," the District Court treated Dewberry Group and its affiliates "as a single corporate entity" for purposes of calculating a profits award.   The District Court thus totaled the affiliates' real-estate profits from the years Dewberry Group infringed, producing an award of nearly $43 million.   A divided Court of Appeals panel affirmed that award.

*Held*: In awarding the "defendant's profits" to the prevailing plaintiff in a trademark infringement suit under the Lanham Act, § 1117(a), a court can award only profits ascribable to the "defendant" itself.   And the term "defendant" bears its usual legal meaning: the party against whom relief or recovery is sought—here, Dewberry Group.   The Engineers chose not to add the Group's affiliates as defendants.   Accordingly, the affiliates' profits are not the (statutorily disgorgable) "defendant's profits" as ordinarily understood.

  Nor do background principles of corporate law convert the one into the other.   This Court has often read federal statutes to incorporate such principles.   So if corporate law treated all affiliated companies as "a single corporate entity," there could be reason to construe the term "defendant" in the same vein.   See *United States* v. *Bestfoods*, 524 U. S. 51, 62.   But the usual rule is the opposite.   "[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations."   *Agency for Int'l Development* v. *Alliance for Open Society Int'l Inc.*, 591 U. S. 430, 435.   And that is so even if the entities are

affiliated—as they are here by virtue of having a common owner. While a court may in select circumstances "pierc[e] the corporate veil," especially to prevent corporate formalities from shielding fraudulent conduct, *Bestfoods*, 524 U. S., at 62, Dewberry Engineers admits that it never tried to make the showing needed for veil-piercing. So the demand to respect corporate formalities remains. And that demand accords with the Lanham Act's text: The "defendant's profits" are the *defendant's* profits, not its plus its affiliates'.

Dewberry Engineers does not contest these points; it instead argues that a court may take account of an affiliate's profits under a later sentence in the Lanham Act's remedies section: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances." § 1117(a). In the Engineers' view, this so-called "just-sum provision" enables a court, after first assessing the "defendant's profits," to determine that a different figure better reflects the "defendant's true financial gain." Brief for Respondent 24. And at that "second step" of the process, the court can consider "as relevant evidence" the profits of related entities. But the District Court did not rely on the just-sum provision. It simply treated Dewberry Group and its affiliates as a single corporate entity in calculating the "defendant's profits." And the Fourth Circuit approved that approach, thinking it justifiable in the circumstances to ignore the corporate separateness of the affiliated companies. The just-sum provision did not come into the analysis and therefore does not support the $43 million award given.

In remanding this case for a new award proceeding, the Court leaves a number of questions unaddressed. The Court expresses no view on whether or how the courts could have used the just-sum provision to support a profits award; whether or how courts can look behind a defendant's tax or accounting records to consider a defendant's true financial gain even without relying on the just-sum provision; and whether veil-piercing remains an available option. Pp. 326–330.

77 F. 4th 265, vacated and remanded.

KAGAN, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, *post*, p. 330.

*Thomas G. Hungar* argued the cause for petitioner. With him on the briefs were *Helgi C. Walker, Jonathan C. Bond, Patrick J. Fuster*, and *Matt Aidan Getz.*

*Nicholas S. Crown* argued the cause for the United States as *amicus curiae* in support of neither party. With him on

the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor General Stewart, Daniel Tenny, Laura E. Myron, Farheena Rasheed, Mai-Trang Dang,* and *Giulio Yaquinto.*

*Elbert Lin* argued the cause for respondent. With him on the brief were *Stephen P. Demm, David M. Parker, David N. Goldman,* and *Arthur E. Schmalz.**

JUSTICE KAGAN delivered the opinion of the Court.

A prevailing plaintiff in a trademark infringement suit is often entitled to an award of the "defendant's profits." 15 U. S. C. § 1117(a). In making such an award, the District Court in this case totaled the profits of the named corporate defendant with those of separately incorporated affiliates not parties to the suit. We hold today that the court erred in doing so. Under the pertinent statutory provision, the court could award only profits properly ascribable to the defendant itself.

I

The trademark dispute here is between two unrelated real-estate companies with the word "Dewberry" in their names.

Dewberry Engineers provides real-estate development services for commercial entities across the country, and particularly in several southeastern States. It owns a registered trademark in the word "Dewberry." That mark gives Dewberry Engineers certain exclusive rights to use the "Dewberry" name in offering real-estate services.

---

*Briefs of *amici curiae* urging reversal were filed for the American Intellectual Property Law Association by *Lauren Keller Katzenellenbogen* and *Ann M. Mueting*; and for the Washington Legal Foundation by *John M. Masslon II* and *Cory L. Andrews.* *Megan K. Bannigan, Jared I. Kagan,* and *Thomas A. Agnello* filed a brief for the International Trademark Association as *amicus curiae* urging vacatur.

*Noel J. Francisco* and *Jennifer L. Swize* filed a brief for Intellectual Property Scholars as *amici curiae* urging affirmance.

Opinion of the Court

Dewberry Group is also a commercial real-estate company operating in the southeast.   Owned by developer John Dewberry, it provides services solely to other, separately incorporated companies in his portfolio (about 30 in all).   Each of those affiliates owns a piece of commercial property for lease, but none has employees to carry out business functions. That is instead Dewberry Group's role.   It affords the affiliates the services needed—financial, legal, operational, and marketing—to generate rental income from the properties they own.   That income goes on the affiliates' books; Dewberry Group receives only agreed-upon fees.   And those fees are apparently set at less than market rates.   According to its tax returns, the Group has operated at a loss for decades; it survives only through occasional cash infusions from John Dewberry himself.   Meanwhile, the affiliates—which, recall, he also owns—have racked up tens of millions of dollars in profit.

The success of John Dewberry's overall business comes in part from trademark infringement—specifically, from Dewberry Group's violation of Dewberry Engineers' trademark rights in the "Dewberry" name.   (If that sentence is confusing—too darn many Dewberrys—it is also a good illustration of why trademarks exist: to prevent consumers from being confused about which company is providing a product or service.)   Dewberry Engineers has sought to defend its trademark rights against Dewberry Group for nearly two decades.   In 2007, an infringement suit the Engineers brought against the Group led to a settlement limiting the latter's use of the word "Dewberry."   But a decade or so later, Dewberry Group reneged on the deal.   As part of a rebranding effort, the Group resumed its use of the "Dewberry" name in the marketing and other materials it used to lease its affiliates' properties.

So Dewberry Engineers sued Dewberry Group again, and won decisively.   The action—brought against Dewberry Group alone—alleged trademark infringement and unfair

competition under the federal Lanham Act, as well as breach of contract (*i. e.*, the settlement agreement) under state law. The District Court found Dewberry Group liable on all counts. It was especially scathing about Dewberry Group's trademark infringements. Those violations, the court held, were "intentional, willful, and in bad faith." 2022 WL 1439826, *6 (ED Va., Mar. 2, 2022). Dewberry Group had encountered "numerous red flags alerting it to the illegality of its conduct," yet continued to use the trademarked name. *Id.*, at *2; see *id.*, at *6. Those findings of willful infringement, later affirmed by the Court of Appeals for the Fourth Circuit, are not before us. See 77 F. 4th 265, 289, 291 (2023).

What remains in dispute is the District Court's award of profits to remedy the infringement. The Lanham Act provides for a prevailing plaintiff like Dewberry Engineers to recover the "defendant's profits" deriving from a trademark violation. § 1117(a). The sole named defendant here is Dewberry Group. But Dewberry Group, as noted above, reports no profits. See *supra,* at 324. Rather, the District Court found, the profits from the Group's illicit conduct (as from all its services) "show up exclusively on the [property-owning affiliates'] books." 2022 WL 1439826, *9. To reflect that "economic reality," the court decided to treat Dewberry Group and its affiliates "as a single corporate entity" for purposes of calculating a profits award. *Id.*, at *10. If those companies were viewed separately, the court reasoned, the "entire Dewberry Group enterprise" would "evade the financial consequences of its willful, bad faith infringement." *Ibid.* By contrast, considering the companies together would prevent the "unjust enrichment" that the Act was meant to target. *Ibid.* The court thus totaled the affiliates' real-estate profits from the years Dewberry Group infringed, producing an award of nearly $43 million. See *id.*, at *14.

A divided Court of Appeals panel affirmed that award. Reiterating the "'economic reality' of Dewberry Group's re-

lationship with its affiliates," the majority approved the District Court's treatment of all the companies "as a single corporate entity." 77 F. 4th, at 290 (quoting 2022 WL 1439826, *10). That approach, the majority reasoned, properly "h[e]ld Dewberry Group to account" for its use of infringing materials to generate corporate profits. 77 F. 4th, at 293. It did not matter that the affiliates, rather than the Group, "receive[d] the revenues" earned, given the links among those companies. *Ibid.* To hold otherwise, the majority thought, would give businesses a "blueprint for using corporate formalities to insulate their infringement from financial consequences." *Ibid.* Judge Quattlebaum dissented. He would have held that the District Court had no authority, in calculating a defendant's profits, to "simply add the revenues [of] non-parties." *Id.*, at 300.

We granted certiorari, 602 U. S. 1038 (2024), and we now vacate the decision below.

## II

The statutory text authorizing a profits award for trademark infringement offers no support for the approach the courts below took. Again, the section of the Lanham Act addressing remedial issues provides that a plaintiff like Dewberry Engineers is "entitled" to "recover [the] defendant's profits." §1117(a); see *supra*, at 325. The term "defendant" is not specially defined, and thus bears its usual legal meaning. A "defendant" is "the party against whom relief or recovery is sought in an action or suit." Black's Law Dictionary 541 (3d ed. 1933). So here the defendant is the entity named in Dewberry Engineers' complaint as liable for infringing the "Dewberry" trademark. And that entity is Dewberry Group alone. See App. 1 ("The Plaintiff, Dewberry Engineers . . . files this Complaint against the Defendant, Dewberry Group"). The Engineers chose not to add the Group's property-owning affiliates as defendants. Accordingly, the affiliates' profits are not the (statutorily disgorgable) "defendant's profits" as ordinarily understood.

Opinion of the Court

Nor do background principles of corporate law convert the one into the other. We have often read federal statutes to incorporate such principles, on the view that Congress would not have wanted to displace "bedrock" features of the common law. *United States* v. *Bestfoods*, 524 U. S. 51, 62 (1998). So if corporate law treated all affiliated companies as (in the District Court's phrase) "a single corporate entity," we might construe the term "defendant" in the same vein—as sweeping in the named defendant's affiliates because they lack a distinct identity. But in fact the usual rule is the opposite. "[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Agency for Int'l Development* v. *Alliance for Open Society Int'l Inc.*, 591 U. S. 430, 435 (2020). And that is so even if the entities are affiliated—as they are here by virtue of having a common owner. See *ibid.*; *Dole Food Co.* v. *Patrickson*, 538 U. S. 468, 474–475 (2003). To be sure, the "principle[] of corporate separateness" has exceptions: A court may in select circumstances "pierc[e] the corporate veil," especially to prevent corporate formalities from shielding fraudulent conduct. *Bestfoods*, 524 U. S., at 62; *Dole Food*, 538 U. S., at 475. But Dewberry Engineers, as it admits, never tried to make the showing needed for veil-piercing. See Brief for Respondent 52, n. 8. So the demand to respect corporate formalities remains. And that demand fits hand-in-glove with the Lanham Act's text: Again, the "defendant's profits" are the *defendant's* profits, not its plus its affiliates'.

Dewberry Engineers cannot, and so does not, contest those points; to defend the decisions below, it must set off on a different path, involving different statutory language. True enough, concede the Engineers, that a court has no authority to "disregard corporate separateness" and order disgorgement of an affiliate's profits as the "defendant's" own. *Id.*, at 2. But a court, the company says, may take account of an affiliate's profits in another way. Dewberry Engineers

here invokes a later sentence in the Act's remedies section: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances." § 1117(a). In the Engineers' view, that so-called just-sum provision enables a court, after first assessing the "defendant's profits," to determine that a different figure better reflects the "defendant's true financial gain." *Id.*, at 24. And at that "second step" of the process, the court can consider "as relevant evidence" the profits of related entities—for example, to see if the defendant diverted some of its earnings to an affiliate's books. *Id.*, at 1, 38. Finally, Dewberry Engineers contends that the courts below in fact followed that approach. In other words, those courts merely considered the affiliates' profits as evidence in assessing Dewberry Group's "true financial gain" under the just-sum provision. *Id.*, at 40.

But that is not a tenable take on why Dewberry Engineers got a $43 million award. The District Court did not rely on the just-sum provision, or suggest that it was departing up from Dewberry Group's reported profits to reflect the company's true gain. There was no two-step process for deciding on the award, but only a single step: the calculation of the "defendant's profits." 2022 WL 1439826, *14; see *id.*, at *9–*10. And in making that assessment, the District Court designated whose profits should count: *both* Dewberry Group's *and* its affiliates', because all those companies should be "treated as a single corporate entity." *Ibid.* That treatment, by its terms, disregards "corporate formalities"—and likewise the "principle[] of corporate separateness." *Dole Food*, 538 U. S., at 476; *Bestfoods*, 524 U. S., at 62. The proof, if any more were needed, is in the number the court arrived at. It was simply the sum of all the Dewberry entities' real-estate profits for the relevant years. That amount accords with the idea that Dewberry Group and its affiliates

should be regarded as one—as *in toto* the "defendant."    But
it conflicts with the Engineers' alternative understanding of
what happened below.    For a court adopting the Engineers'
view would have had to identify which of the affiliates'
profits were properly attributable to Dewberry Group, as
reflecting the Group's own gain.    And the court could not
plausibly have concluded that *all* of them were, given (at a
minimum) that the affiliates owned the rent-producing prop-
erties.    The only way to reach the District Court's wholesale
result was to take a simpler tack: to lump together Dewberry
Group and its affiliates as (in the court's own words) a sin-
gle entity.

So too, the Court of Appeals' decision bears no resem-
blance to Dewberry Engineers' description.    No more than
the District Court did the Fourth Circuit rely on the just-
sum provision, or on any "second-step" analysis that it en-
ables.    The Court of Appeals related, in straightforward
manner, the basis of the District Court's decision: The lower
court, to determine profits, "treated Dewberry Group and its
affiliates as a single corporate entity."    77 F. 4th, at 290.
And the appellate court approved that treatment for much
the same reasons the District Court gave—because of the
"economic reality" of how the Dewberry companies operated
and the fear that "corporate formalities" would otherwise
insulate infringing conduct from any penalty.    See *ibid.*; *id.*,
at 293; *supra*, at 325–326.    The concern in such circum-
stances is not amiss.    But as even the Engineers agree, it
cannot justify ignoring the distinction between a corporate
defendant (*i. e.*, Dewberry Group) and its separately incorpo-
rated affiliates.    By treating those entities as one and the
same, the courts below approved an award including *non*-
defendants' profits—and thus went further than the Lanham
Act permits.

In remanding this case for a new award proceeding, we
leave a number of questions unaddressed.    First, we express
no view on Dewberry Engineers' understanding of the just-

sum provision.  We have concluded only that the courts below did not invoke that provision to support the $43 million award.  Whether (or how) they could have used the provision is not properly before us; still less is whether Dewberry Engineers may press its just-sum theory on remand given forfeiture rules.  Second, we also state no view on the position of the Government respecting when courts, even without relying on the just-sum provision, can look behind a defendant's tax or accounting records to consider "the economic realities of a transaction" and identify the defendant's "true financial gain."  Brief for United States as *Amicus Curiae* 13; see *id.*, at 18–22, 30–34; Tr. of Oral Arg. 36–41. Again, it is now up to the lower courts to decide whether to consider the Government's proposals.  And third, we offer no opinion on whether, as raised during oral argument here, corporate veil-piercing is an available option on remand. See *id.*, at 77; Brief for Respondent 52, n. 8.

All we hold today is that the courts below were wrong to treat Dewberry Group and its affiliates as a single entity in calculating the "defendant's profits."  Dewberry Group is the sole defendant here, and under that language only its own profits are recoverable.

We therefore vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOTOMAYOR, concurring.

I join in full the Court's opinion, which holds that courts must respect principles of corporate separateness in calculating a "defendant's profits" for purposes of the Lanham Act. See *ante*, at 327 and this page.  Those principles and the Lanham Act's plain text prohibited the lower courts from attributing to Dewberry Group all the profits of its affiliates, absent veil piercing.  See *ante*, at 326–327.  Dewberry Group itself, however, reports no profits on its tax returns.  It has oper-

ated at a loss for decades, while its affiliates have made tens of millions in profits with the aid of the Group's trademark-infringing services. Before the lower courts, Dewberry Group indicated that its own tax returns should control the calculation of its profits, meaning that the Group would owe zero dollars in disgorgement.*

I write separately to underscore that principles of corporate separateness do not blind courts to economic realities. Nor do they force courts to accept clever accounting, including efforts to obscure a defendant's true financial gain through arrangements with affiliates. To the contrary, there are myriad ways in which courts might consider accounting arrangements between a defendant and its affiliates in calculating a "defendant's profits." Two examples illustrate the point.

First, consider a company that establishes a non-arm's-length relationship with an affiliate that effectively assigns some portion of its revenues to the latter. For instance, if the company charges below-market rates to its affiliate for infringing services, that arrangement might be seen as essentially assigning a share of the company's earnings to its affiliate in advance. The affiliate's profits in that scenario might bear on what the company itself would have earned in an arm's-length relationship. Taking account of such evidence in calculating the company's profits would likely not transgress corporate formalities or the Lanham Act's text, so long as the court's focus remained on calculating "profits properly ascribable to the defendant itself." *Ante*, at 323.

This Court, moreover, has long recognized in the tax context that it is possible to account for anticipatory assignment schemes without contravening principles of corporate sepa-

---

*See 77 F. 4th 265, 290 (CA4 2023) ("Dewberry Group presented evidence that it 'generated zero profits because the Dewberry Group, Inc. tax entity showed losses on its tax returns'"); 2022 WL 1439826, *9, *13 (ED Va., Mar. 2, 2022); 10 App. in No. 22–1622 etc. (CA4), pp. 4958–4965.

rateness.    See, *e. g.*, *Commissioner* v. *Banks*, 543 U. S. 426, 433 (2005) ("A taxpayer cannot exclude an economic gain from gross income by assigning the gain in advance to another party"); *Commissioner* v. *Sunnen*, 333 U. S. 591, 604 (1948) (similar); *Lucas* v. *Earl*, 281 U. S. 111, 114–115 (1930) (similar).    That precedent may provide guidance in calculating a "defendant's profits" under the Lanham Act when courts are faced with similar arrangements, "'however skillfully devised[,] to prevent [income] . . . from vesting even for a second in the man who earned it.'"    *Banks*, 543 U. S., at 434 (quoting *Lucas*, 281 U. S., at 115 (second alteration in original)).

Second, courts calculating disgorgement awards might consider evidence that a company indirectly received compensation for infringing services through related corporate entities.    For instance, where there is evidence that a company charged below-market rates for infringing services to affiliates, but a common owner made up the difference via cash infusions to the company, that evidence may bear on the company's profits under the Lanham Act.    Indeed, such cash infusions may reflect some portion of the profits that the company would have earned from its infringing services in an arm's-length relationship.    See Brief for United States as *Amicus Curiae* 18–19.    Again, drawing on such evidence in calculating a Lanham Act disgorgement award need not impermissibly attribute an affiliate's profits to the defendant.

This is all to say that principles of corporate separateness do not force courts to close their eyes to practical realities in calculating a "defendant's profits."    After all, the Lanham Act itself directs courts to calculate such profits "subject to the principles of equity."    15 U. S. C. § 1117(a).    Those principles, unsurprisingly, support the view that companies cannot evade accountability for wrongdoing through creative accounting. Equity "regards substance rather than form."    2 S. Simons, Pomeroy's Equity Jurisprudence § 378, p. 40 (5th ed. 1941) (internal quotation marks omitted).    And equity demands

SOTOMAYOR, J., concurring

"the wrongdoer should not profit by his own wrong." *Liu* v. *SEC*, 591 U. S. 71, 80 (2020) (internal quotation marks omitted). Congress enacted the Lanham Act, moreover, to ensure "trademarks [w]ould receive nationally the greatest protection that can be given them." *Park 'N Fly, Inc.* v. *Dollar Park & Fly, Inc.*, 469 U. S. 189, 193 (1985) (internal quotation marks omitted). Disgorgement awards play a leading role in that regime, and the text of the Act forecloses any claim that Congress looked favorably on easy evasion.

Because this issue was not considered below within the right framework, the Court today rightly declines to decide exactly when and how courts may look beyond a defendant's books in calculating Lanham Act disgorgement awards. See *ante*, at 330. In new award proceedings on remand, however, the lower courts may explore that important issue and consider reopening the record if appropriate. See *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U. S. 321, 331 (1971) ("[A] motion to reopen to submit additional proof is addressed to [the trial court's] sound discretion"). Courts must be attentive to practical business realities for our Nation's trademark laws to function, and the Lanham Act gives courts the power and the duty to do so.

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 330, line 4 from bottom: "forbade" is changed to "prohibited"