120 T.C. No. 1

UNITED STATES TAX COURT

THOMAS D. TUKA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12224-01.                    Filed January 6, 2003.

P excluded from gross income certain disability
benefits that he received under a pilot disability plan
funded by his employer, U.S. Airways, Inc.  P alleges
that in prior collective bargaining negotiations, the
Airline Pilots Association and U.S. Airways pilots made
wage concessions in exchange for the pilot disability
plan.  P argues that, in reality, the concessions he
and the other pilots made represent the contributions
to the pilot disability plan for purposes of sec.
104(a)(3), I.R.C.

<u>Held</u>:  P's employer, U.S. Airways, funded the
pilot disability plan for purposes of sec. 104(a)(3),
I.R.C.  Contributions to the plan were not includable
in P's gross income.  Accordingly, the disability
benefits are not excluded under sec. 104(a)(3), I.R.C.

Thomas D. Tuka, pro se.

Julia L. Wahl, for respondent.


RUWE, Judge:  Respondent determined a deficiency of $19,565
in petitioner's Federal income tax for 1999 and an accuracy-
related penalty under section 6662(a)[1] of $3,913.  Respondent
concedes the accuracy-related penalty, and the issue for decision
is whether certain disability benefits that petitioner received
in 1999 were properly excluded from gross income under section
104(a)(3).

                        FINDINGS OF FACT

Some of the facts have been stipulated and are so found.
The stipulation of facts and the attached exhibits are
incorporated herein by this reference.  At the time of filing the
petition herein, petitioner resided in Beaver Falls,
Pennsylvania.

Petitioner was employed as an airline pilot for U.S.
Airways, Inc., from 1972 until July 1995, when he left work
because of carpal tunnel syndrome.  U.S. Airways paid petitioner
hourly wages.  The hourly rate of compensation was established in
collective bargaining negotiations between U.S. Airways and the
Airline Pilots Association (ALPA).  Petitioner's disability

---

[1]All section references are to the Internal Revenue Code in
effect for the taxable year at issue.

benefits package was also established through collective bargaining negotiations. ALPA negotiated with U.S. Airways for disability benefits for its member pilots.

As a result of petitioner's carpal tunnel syndrome, he was eligible for disability benefits under the pilot disability plan. In 1999, U.S. Airways, through Reliastar Life of New York, paid to petitioner $83,046.54 in disability benefits. Petitioner's disability benefits were paid on the basis of his age, years of service, and salary. The disability benefits were not paid on the basis of his medical condition.

Reliastar issued a Form W-2, Wage and Tax Statement, on which it reported the disability benefits that petitioner received in 1999 as taxable income ("Wages, tips, other compensation"). Petitioner did not report the disability benefits as income on the Form 1040, U.S. Individual Income Tax Return, that he filed with respect to taxable year 1999.

Petitioner alleges, and he introduced testimony to show, that U.S. Airways pilots made wage concessions of approximately $20 million in exchange for the pilot disability plan. Petitioner's disability benefits package under that plan did not result in any separate deductions out of his pay, and its cost was not incorporated in his union dues. Instead, petitioner alleges that the pilot disability plan was "paid for at the negotiating table" through the wage concessions.

OPINION

Petitioner argues that the disability benefits that he received in 1999 are excluded from gross income under section 104(a)(3). Respondent determined that those amounts are not excluded from gross income.

Gross income includes income from whatever source derived. Sec. 61(a). However, gross income does not include amounts received through accident and health insurance for personal injuries or sickness other than amounts received by an employee, to the extent such amounts: (1) Are attributable to contributions by the employer which were not includable in the gross income of the employee or (2) are paid by the employer. Sec. 104(a)(3).[2]

---

[2]Sec. 105(a) specifically includes in gross income amounts received by an employee through accident or health insurance for personal injuries or sickness to the extent such amounts: (1) Are attributable to contributions by the employer which were not includable in the gross income of the employee, or (2) are paid by the employer. However, sec. 105(b) limits the application of sec. 105(a) for certain amounts which are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care of the taxpayer, his spouse, and his dependents. Further, gross income does not include disability benefits to the extent that they constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent, and which are computed with reference to the nature of the injury without regard to the period the taxpayer is absent from work. Sec. 105(c). The exclusions under sec. 105(b) and (c) do not apply to the facts in the instant case and petitioner has made no argument that they do.

The amounts that petitioner received under the pilot disability plan were received through accident and health insurance for personal injuries or sickness within the meaning of section 104(a)(3).  Trappey v. Commissioner, 34 T.C. 407 (1960); Andrews v. Commissioner, T.C. Memo. 1992-668.  Thus, petitioner may exclude those amounts if he paid premiums for the disability plan or if his employer paid premiums and the premiums were includable in his gross income.  See Miley v. Commissioner, T.C. Memo. 2002-236.

Petitioner suggests that, in reality, the employees of U.S. Airways, including petitioner, paid the contributions that were made to the pilot disability plan.  He cites the negotiations between ALPA and U.S. Airways wherein ALPA and the U.S. Airways pilots made wage concessions in exchange for the disability benefits package.  Petitioner suggests that the wage concessions the U.S. Airways employees made funded the contributions to the pilot disability plan.  Petitioner argues that the disability benefits that he received under that plan are excludable from gross income under section 104(a)(3).  We disagree.

There is no dispute in this case that any contributions to the pilot disability plan were actually paid by U.S. Airways, petitioner's employer.  Consequently, any benefits received under that plan are includable in petitioner's income unless the contributions were includable in petitioner's gross income.  We

cannot accept petitioner's argument that, in reality, the contributions were made by U.S. Airways employees, including petitioner, via the wage concessions. To accept petitioner's position would essentially qualify any negotiated disability package for exclusion under section 104(a)(3) since any such package could be construed as a substitute for wages that employees might otherwise receive. We cannot agree that Congress intended section 104(a)(3) to be read so broadly as to exclude accident or health insurance benefits attributable to wage concessions made in a negotiated bargaining process.

Although section 104(a)(3) is not explicit on the subject, it clearly contemplates that exemption of benefits depends on whether contributions to an accident and health insurance plan involve after-tax dollars. Indeed, if an employee is to exclude disability benefits attributable to employer contributions, those contributions must have been includable in the employee's gross income. Sec. 104(a)(3). Petitioner asks this Court to accept that wage concessions, which reduced the wages he might have otherwise received, but which were not taxed, represent contributions that he made to an accident or health insurance plan for purposes of section 104(a)(3). This would be contrary to the underlying intent that Congress had in enacting that Code section and the limitations that it imposed on exclusion therein.

Petitioner also contends that regardless of whether U.S. Airways in fact funded the disability plan, any contributions that U.S. Airways made to the plan "would be constructive income to the Petitioner, and thus includible in the Petitioner's gross income for each year the contributions were made." However, as a general matter, the gross income of an employee does not include employer-provided coverage under an accident or health plan. Sec. 106(a). Thus, we cannot agree that any contributions that U.S. Airways made to the disability plan were properly includable in petitioner's gross income.

The benefits that petitioner received in 1999 are not excludable under section 104(a)(3).[3] Accordingly, we hold that the payment received in 1999 constitutes gross income, and we sustain respondent's determination of a deficiency.

<u>Decision will be entered for respondent except for the accuracy-related penalty under section 6662(a)</u>.

---

[3]Petitioner also argues that the "US Air, Inc. Pilot's Working Agreement" must be construed in conformance with the laws of the Commonwealth of Pennsylvania, which prohibit taxation on disability payments because they are not considered to be the property of the beneficiary. This case raises a question regarding the application of sec. 104(a)(3) of the Internal Revenue Code. Whether the Commonwealth of Pennsylvania expressly prohibits taxation of disability payments has no relevance in deciding the issue before us.