T.C. Memo. 2006-239

UNITED STATES TAX COURT

CLIFF CONNORS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15063-05.                    Filed November 7, 2006.

<u>William S. Neal</u>, for petitioner.

<u>Theresa G. McQueeney</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $80,269 in petitioner's Federal income tax and additions to tax of $18,061, $9,632, and $2,684 under sections 6651(a)(1) and (2) and 6654, respectively, for 2002.  Respondent conceded the section 6654 addition to tax in respondent's objection to petitioner's motion to amend petition, filed on June 9, 2006.

After concessions by the parties, the issues for decision are:

(1) Whether payments made to petitioner, pursuant to a long-term disability income settlement, by Connecticut General Life Insurance Co. (Connecticut General) are taxable gross income to petitioner in 2002;

(2) whether Citibank interest income of $972, attributable to the Quadrino & Schwartz, P.C. (Quadrino & Schwartz), escrow account, and $15 of interest income from a U.S. savings bond are taxable to petitioner in 2002;

(3) whether petitioner is entitled to certain credits, exemptions, or deductions in 2002;

(4) whether petitioner is liable for the additions to tax under section 6651(a)(1) and (2); and

(5) whether petitioner's proper filing status for 2002 is married filing separately.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

                    FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

Petitioner resided in Woodhaven, New York, at the time that he filed his petition.

On July 5, 1990, petitioner was injured on the job while employed as a salesman for American Cablevision of Queens (American), a subsidiary of American Television & Communications Corp. (ATC), now known as Time Warner. Petitioner has not returned to work since the time of the injury. American determined that petitioner was totally disabled as a result of the injury. Petitioner was covered, at the time, by a disability insurance plan issued by Connecticut General, a subsidiary of Cigna Group Insurance (Cigna). Under the "Summary Plan Description", it is stated that "the cost of the Plan is paid by the sponsor". The sponsor, as designated in the summary plan description, was ATC. The Group Long Term Disability Policy, policy No. 0415174-03, effective January 1, 1983, provided that, in the event of total disability, the insured would qualify for the monthly benefit. The monthly benefit for any month was 66-2/3 percent of the insured's monthly basic earnings at the time that he became totally disabled, less any applicable adjustments. Pursuant to this policy, Connecticut General paid disability benefits to petitioner from October 1990 through March 1995.

On or about April 1, 1995, Connecticut General ceased paying disability benefits to petitioner. Petitioner retained Quadrino

& Schwartz, on a contingent fee basis, to pursue litigation against Connecticut General. On November 20, 1998, Quadrino & Schwartz filed a complaint on behalf of petitioner against Connecticut General in the U.S. District Court, Southern District of New York, docket No. 98 CV 8522 (JSM), seeking declaratory relief that petitioner was disabled and covered under the terms of the policy, payment of past due benefits, and payment of continuing benefits. Petitioner and Connecticut General settled the case in July 2002.

The settlement agreement, signed by petitioner, provided that Connecticut General--

> shall issue a settlement check in the amount of * * * $252,317.62 payable to QUADRINO & SCHWARTZ as attorneys for CLIFF CONNORS for all of the back benefits which are payable under the terms of the policy and interest on all of the back benefits in the amount of * * * 4.5 percent compounded annually.

Additionally, the settlement provided that Connecticut General "shall pay future benefits to CLIFF CONNORS as per the terms of the policy and issue monthly checks payable to 'QUADRINO & SCHWARTZ as Attorneys for CLIFF CONNORS.'"

Connecticut General issued a settlement check to "Quadrino & Schwartz as Attorneys for Cliff Connors" in the amount of $252,317.62. It also issued checks to "Cliff Connors c/o Quadrino & Schwartz" for June and July disability payments. Quadrino & Schwartz made payments to petitioner, out of the escrow account maintained for petitioner, as follows: $59,286.51

on July 28, 2002; $4,902 on August 23, 2002 (reflecting the June and July monthly benefit payments); and $141,565.77 on February 14, 2005.  Additionally, four monthly benefit payments of $2,451 each, for August through November 2002, were received on behalf of petitioner and mailed directly to him.  Connecticut General issued a Form W-2, Wage and Tax Statement, to petitioner in 2002, reflecting the $252,317.62 payment for past due benefits and $17,157 of ongoing monthly benefit payments of $2,451 from June 1 through December 31, 2002.  The Form W-2 did not reflect any Federal income tax withholding.

Additionally, during 2002, attorney's fees were paid out of the escrow account to Quadrino & Schwartz in the amount of $6,595.72 on July 29, 2002; to William Neal (Neal), counsel of record in this case, in the amount of $8,831.11 on August 5, 2002; and to Advance Settlement Funding in the amount of $14,200 on December 24, 2002.  A $25,000 payment was made to Quadrino & Schwartz on February 14, 2005, as well.

On September 24, 2002, Quadrino & Schwartz filed a complaint in the Supreme Court of the State of New York, County of Nassau, against petitioner.  Quadrino & Schwartz claimed that, despite the terms of the retainer agreement between Quadrino & Schwartz and petitioner, petitioner refused to honor the terms of the agreement and refused to pay Quadrino & Schwartz 50 percent of the recovery that petitioner received from Connecticut General.

Quadrino & Schwartz asserted a lien of 50 percent against the recovery paid by Connecticut General, asserted a lien against every monthly disability benefit payment paid by Connecticut General to petitioner, and maintained that amount in the escrow account until resolution of the dispute.

Quadrino & Schwartz maintained the escrow account at Citibank in 2002. The escrow account schedule reflects that interest of $3,186.49 was earned on the account from July 3, 2002, through February 14, 2005. Petitioner also maintained an individual bank account at Citibank.

Petitioner was married to Lucy Lejin Qi Connors (Mrs. Connors) on February 14, 2001. Neither petitioner nor Mrs. Connors filed a Federal income tax return for 2002 or paid any taxes for that year. A substitute return under section 6020(b) was prepared by the Internal Revenue Service for that year on February 1, 2005. Petitioner was a cash basis taxpayer in 2002.

Procedural Matters

Respondent sent a notice of deficiency for 2002 to petitioner on May 27, 2005. Petitioner filed the petition in this case on August 15, 2005. The petition placed in issue only the insurance proceeds, alleging:

> 4. The determination of the tax set forth in the said notice of deficiency is based upon the following errors:

a.  that the disability income payments under an insurance policy are taxable.

5.  The facts upon which the petitioner relies, as the basis of petitioner's case, are as follows:  taxes are paid by the insurance company as provided by the insurance policy.

No other errors were pleaded.  At all times during this case, petitioner was represented by Neal.  By notice served October 14, 2005, this case was set for trial in New York City on March 20, 2006.  Attached to the notice was the Court's standing pretrial order, which provided in part:

Continuances will be granted only in exceptional circumstances.  See Rule 133, Tax Court Rules of Practice and Procedure. * * * Even joint motions for continuance will not be routinely granted.

*       *       *       *       *       *       *

ORDERED that all facts shall be stipulated to the maximum extent possible.  All documentary and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used solely to impeach the credibility of a witness. Objections may be preserved in the stipulation.  If a complete stipulation of facts is not ready for submission at the commencement of the trial or at such other time ordered by the Court, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party.  Any documents or materials which a party expects to utilize in the event of trial * * * but which are not stipulated, shall be identified in writing and exchanged by the parties at least 14 days before the first day of the trial session.  The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown.  It is further

*       *       *       *       *       *       *

ORDERED that all parties shall be prepared for trial at any time during the term of the trial session unless a specific date has been previously set by the Court.  * * *

On January 3, 2006, respondent's requests for admission were served and filed, and, because petitioner failed to respond, the facts therein were deemed admitted pursuant to Rule 90.  On February 6, 2006, respondent filed a motion to compel production of documents and a motion to compel responses to respondent's interrogatories.  Such requests had been served on petitioner on December 30, 2005, and petitioner, though represented by Neal, had not produced any documents or answered the interrogatories.  By order of the Court dated February 9, 2006, respondent's motions were granted in that petitioner was ordered to produce the requested documents and to answer the interrogatories on or before March 1, 2006.  On February 15, 2006, Neal filed a motion to continue, alleging that petitioner was in China and could not return for the trial.  Respondent objected to the motion to continue on the grounds that--

4.  With regard to the March 1, 2006 discovery deadlines, it is respondent's understanding that as early as the filing of the petition in this case, petitioner has had access to Cigna, who is the parent company for the 2002 payment made by Connecticut General * * *.  Despite such access, petitioner has provided no documentation other than the initial disability insurance policy in support of the 2002 payment of $269,474 at issue.  Petitioner has provided no reasonable explanation regarding why he was unable to provide a copy of the 2002 settlement and/or the underlying terms and/or any documentation from the

payer, Connecticut General * * * or Cigna to support the requested continuance.

5. Petitioner recently traveled to China with no regard for the March 20, 2006 U.S. Tax Court calendar date. It is respondent's understanding that petitioner did not leave until long after the October 14, 2005 Notice Setting Case for Trial was issued.

6. In support of petitioner's continuance request, petitioner stated that he is infirm and permanently disabled. Such health condition is not recently contracted, and did not deter the petitioner from petitioning the Tax Court. Petitioner makes no claim that his health condition will be improved at some later date. As such, a continuance should not be granted based on petitioner's health condition.

7. Further, petitioner's ability to complete a recent 14 to 17 hour flight to China despite his health condition supports the determination that petitioner could have appeared in Tax Court on March 20, 2006, had he not left the country. Lastly, petitioner should have considered the financial impact of his travel to China and his ability to return to the U.S. for the March 20, 2006 calendar prior to his departure.

Petitioner's motion to continue was denied because petitioner was already in default of discovery obligations and because the Court was not persuaded that petitioner could not or should not be present at trial. Moreover, the documents that petitioner and Neal failed to produce would be the relevant evidence as to the taxability of the insurance proceeds in dispute.

When the case was called for trial, Neal renewed the motion for continuance, stating that petitioner was still out of the country. Neal asserted that petitioner had left for China before the notice setting trial was served. Although Mrs. Connors

testified, she did not indicate when petitioner left for China or when he was expected to return. The renewed motion was denied.

During trial, Neal raised for the first time the claim that petitioner was entitled to certain deductions, exemptions, and credits. The only evidence presented at trial was the testimony of Mrs. Connors to say that she was married to petitioner, which was already stipulated, that they had a daughter together, and that petitioner had two sons. Mrs. Connors testified that $5,000 was paid by petitioner on behalf of his two sons and that, depending on circumstances, petitioner's sons were with them "once a week".

At the conclusion of the trial petitioner was directed, on the record and by order to show cause, to make an offer of proof that would justify reopening the record as to evidence regarding petitioner's liability for penalties in the event the disability payments were taxable. The Court left open the possibility of petitioner's testimony if he returned from China. Neal was told "you're going to have to make a specific statement as to when Mr. Connors will be available in New York or Washington to testify. He can give you an affidavit about what he wants to testify about, and Respondent can decide whether they want to cross-examine." He was also informed that any affidavits provided as part of the offer of proof regarding petitioner's reliance on tax advice from third parties and professionals

should be very specific and detailed. "[H]e is going to have to show that he provided specific information to specific professionals about the facts of the 2002 situation, not just that he had an impression based on what occurred before that." Petitioner was also directed that any motion for leave to amend the petition regarding additional issues that petitioner wanted to raise that had not yet been pleaded, such as deductions, be filed by May 22, 2006. Neal was told at trial that Mrs. Connors's testimony needed to be substantiated by documents showing what petitioner paid for the support of his sons, what the custody arrangements were in 2002, and whether there were any agreements regarding support. He was told that he also needed to include in the offer of proof applicable caselaw to support the claims for deductions, exemptions, and credits.

Petitioner's motion to amend the petition and petitioner's offer of proof were filed on May 19, 2006. The proposed amended petition failed to identify any specific deductions to which petitioner would be entitled, failed to contain clear and concise assignments of error on the part of respondent or any clear and concise statements of fact on which petitioner based an assignment of error, and failed to allege any specific facts with respect to the additions to tax. The proposed amended petition disputed the taxability of the insurance benefits and stated:

> The facts upon which the petitioner relies, as the basis of petitioner's case, are as follows: Taxes are

paid by the insurance company as provided by the insurance policy; he actually received a reduced amount of funds in 2002 from his federal court case, and lawyers therein withheld most of said funds pending outcome of the other case on attorney fees for the federal court case; further, he did indeed pay premiums for health and disability insurance coverage through his employer, Time Warner; and that, if any deficiency is sustained against him, then he is entitled to such exemptions, credits and deductions including earned income credit as allowed for a married man with three children and others that apply to his circumstances.

There were no documents, records, or affidavits attached to the offer of proof to substantiate any of the statements made therein.

Additionally, petitioner never sought to be relieved of the deemed admissions in this case. The deemed admissions include that petitioner paid no premiums toward his insurance policy, that Connecticut General's 2002 payment of $269,474 to petitioner was in satisfaction of the insurance company's requirement to pay to petitioner 66-2/3 percent of his salary as a disability payment, that the 2002 Form W-2 for $269,474 included no Federal income tax withholding, that petitioner earned interest income of $972 and $15 from Citibank in 2002 on the escrow account and a U.S. savings bond, respectively, that petitioner's failure to file timely the 2002 tax return was not due to reasonable cause and was due to willful neglect, and that the section 6651(a)(1) and (2) additions to tax are applicable for 2002.

Respondent objected to the motion to amend the petition and to reopening the record. By order dated June 27, 2006, the Court

concluded that nothing would be gained by reopening the record for further evidence and that justice does not require that petitioner be permitted to amend the petition; this case was submitted on the evidentiary record as of March 21, 2006. On review of the entire record, we conclude that petitioner's testimony would not affect the result in this case.

OPINION

Under section 7491(a), the burden of proof on any factual issue relevant to ascertaining the taxpayer's tax liability shifts from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to such factual issue. Sec. 7491(a)(1). However, section 7491(a)(1) applies with respect to an issue only if the taxpayer has complied with the requirements under the Code to substantiate any item, has maintained all records required under the Code, and has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. See sec. 7491(a)(2)(A) and (B). Under section 7491(c), respondent has the burden of production with respect to the liability of any individual for any penalty or addition to tax.

Petitioner failed to maintain adequate records or to produce credible evidence. Therefore, the burden of proof has not shifted to respondent under section 7491(a)(1). In regard to the additions to tax, petitioner has admitted that no tax return was

filed by petitioner for 2002 and that no taxes were paid. Respondent has shown that the substitute return filed on behalf of petitioner for 2002 met the requirements of section 6020(b). See infra p. 24. Therefore, respondent has met the burden of production under section 7491(c). See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Disability Benefit Payments

The benefits in dispute in this case were paid pursuant to a policy obtained through petitioner's employer. Section 61(a) includes in gross income "all income from whatever source derived", unless otherwise provided. Section 105(a) provides that amounts received by an employee through accident or health insurance are includable in the gross income of the employee to the extent such amounts are attributable to contributions by the employer that were not includable in the gross income of the employee or are paid by the employer. Therefore, benefits received under a plan are includable in petitioner's income unless the contributions were includable in petitioner's gross income. Tuka v. Commissioner, 120 T.C. 1, 4 (2003), affd. 85 Fed. Appx. 875 (3d Cir. 2003).

Gross income does not include amounts received through accident or health insurance for personal injuries or sickness to the extent such amounts are attributable to contributions by the employer that were includable in the gross income of the employee

or are paid for by the employee.  See sec. 104(a)(3).  Therefore, petitioner may exclude the amounts he received if he paid premiums for the disability plan or if his employer paid premiums and the premiums were includable in his gross income.  See Tuka v. Commissioner, supra at 3; Miley v. Commissioner, T.C. Memo. 2002-236.  In Tuka, the Court stated:

> Although section 104(a)(3) is not explicit on the subject, it clearly contemplates that exemption of benefits depends on whether contributions to an accident and health insurance plan involve after-tax dollars.  Indeed, if an employee is to exclude disability benefits attributable to employer contributions, those contributions must have been includable in the employee's gross income.  * * * [Tuka v. Commissioner, supra at 4.]

If an employer is the sole purchaser of a policy of accident or health insurance for its employees (on either a group or individual basis), the exclusion provided under section 104(a)(3) does not apply to any amounts received by his employees through such fund or insurance.  Sec. 1.104-1(d), Income Tax Regs.

Petitioner argues that the benefits he received are not includable in his income because he paid the premiums for the policy.  The policy specifically states that the plan was paid for by ATC, the parent of petitioner's employer.  Petitioner does not dispute the assertion by Connecticut General, relied on by respondent, in a stipulated exhibit, that the premiums paid were not included in his taxable income.  Petitioner has presented no evidence, reason, or authority to apply the exception under

section 104(a)(3). Additionally, a fact deemed admitted under Rule 90 is that petitioner did not pay premiums toward his insurance policy. Therefore, the disability payments made by Connecticut General to petitioner are not excluded from petitioner's gross income by section 104(a)(3). See Tuka v. Commissioner, supra at 4; sec. 1.104-1(d), Income Tax Regs.; see also Emerson v. Commissioner, T.C. Memo. 2000-137; Rabideau v. Commissioner, T.C. Memo. 1997-230.

In the alternative, petitioner argues that the exception under section 105(c) applies because the amounts he received were "based on the type and severity of his injuries suffered by himself and not because of his position, salary, investment or other extraneous factors related to his company or employment."

Section 105(c) provides an exception to includability for amounts received by an employee through accident or health insurance to the extent attributable to employer contributions that were not includable in an employee's gross income. Under section 105(c), amounts attributable to employer contributions are excluded from gross income to the extent such amounts (1) constitute "payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement" of the taxpayer, and (2) are computed "with reference to the nature of the injury without regard to the period the employee is absent from work."

Under the terms of the policy, long-term disability benefits were based on petitioner's monthly basic earnings at the time that he became totally disabled.  The benefit payments that petitioner received at the time of his disability, as well as the payments made pursuant to the settlement agreement, were based on the terms of the policy and the coverage it provided and not by reference to the nature of petitioner's injury.  Petitioner has offered no evidence to the contrary.  Additionally, a fact deemed admitted under Rule 90 is that Connecticut General's payment of $269,474 to petitioner was in satisfaction of the insurance company's requirement to pay 66-2/3 percent of his salary as a disability payment.  Therefore, the exception under section 105(c) is not applicable.

Finally, on brief, petitioner argues that "on settlement of that case * * * [he] did not receive all that money, oh no, he received much, much less money from that case."  He argues that Quadrino & Schwartz retained the larger portion of the lawsuit settlement and denied him access to most of his funds.  Additionally, petitioner argues that the $141,565.77 payment made to petitioner on February 14, 2005, from the Quadrino & Schwartz escrow account should not be taxable to him in 2002 because he is a cash basis taxpayer.

As a general rule, when a taxpayer's litigation recovery constitutes income, the taxpayer is taxable on the contingent fee

portion of the litigation recovery.  Commissioner v. Banks, 543 U.S. 426 (2005).  Section 212 allows a deduction for all of the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income.  Sec. 212(1).  The attorney's fees paid by petitioner would be allowed as a itemized deduction under this section.  The deduction would, however, be subject to the 2-percent floor under section 67 because it does not fall under any of the section 67(b) exclusions.  Respondent has conceded that petitioner may deduct his attorney's fees of $29,626.83 ($6,595.72 + $8,831.11 + $14,200 = $29,626.83) incurred in 2002 as a miscellaneous itemized deduction for that year under section 67, subject to the 2-percent floor.  See Commissioner v. Banks, supra at 432.

In regard to the insurance benefit paid to petitioner in 2002, section 451(a) provides that the amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for in a different period. Income is constructively received by a taxpayer in the taxable year in which such income is credited to the taxpayer's account, is set apart for the taxpayer, or is otherwise made available so that the taxpayer could have drawn upon it during the taxable year if notice of intention to withdraw had been given.  Income

is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Sec. 1.451-2(a), Income Tax Regs.; see Childs v. Commissioner, 103 T.C. 634, 654 (1994), affd. 89 F.3d 856 (11th Cir. 1996).

Generally, receipt of payment by an agent is constructive receipt by the principal. Md. Cas. Co. v. United States, 251 U.S. 342, 346-347 (1920); Joyce v. Commissioner, 42 T.C. 628, 639 (1964); see also Burkes v. Commissioner, T.C. Memo. 1998-61. In Gale v. Commissioner, T.C. Memo. 2002-54, funds from a lawsuit against United Ready Mixed were paid at the taxpayer's direction, under the terms of a settlement agreement signed by the taxpayer, to the taxpayer's attorney, to be deposited into an attorney-client trust account. The funds were placed into the trust account pending resolution of a dispute about attorney's fees. However, the Court stated in Gale:

> There is no need to consider the doctrine of constructive receipt because petitioner did not delay United Ready Mixed's payment.[12] As between petitioner and United Ready Mixed, the settlement amount was fully paid in 1992. United Ready Mixed retained no interest in the funds after they were paid, at petitioner's direction pursuant to the terms of the settlement agreement, to petitioner's attorney. Any restriction placed on the use of the settlement proceeds after payment by United Ready Mixed, whether the restriction was placed on the funds voluntarily by petitioner or through acts by petitioner's creditors, does not delay petitioner's receipt of the income for income tax purposes. [Gale v. Commissioner, supra; citations omitted.]

[12] "Constructive receipt" as defined in sec. 1.451-2(a), Income Tax Regs., is a legal term of art

that applies when payment has not been effected because of the payee's postponing payment. The term "constructive receipt" could also be used in its vernacular sense for any payment not physically received by the taxpayer. A taxpayer has "constructive receipt", in its vernacular sense, of funds paid directly to the taxpayer's agents or creditors. The legal doctrine of constructive receipt defined in sec. 1.451-2(a), Income Tax Regs., however, does not apply to completed payments received by a payee's agents or creditors. We have used the term "taxable receipt" to distinguish between physical receipt and nonphysical receipt that the law treats as received for tax purposes.

Connecticut General placed no restrictions on petitioner's use of the funds, and the payment was made to petitioner's attorneys on petitioner's behalf at petitioner's direction pursuant to the settlement agreement. The Supreme Court has observed that client and lawyer are in "a quintessential principal-agent relationship" and that it is "appropriate to treat the full amount of the recovery as income to the principal." Commissioner v. Banks, supra at 436. Petitioner's counsel was acting as petitioner's agent and petitioner's creditor in receiving and holding the funds. Settlement proceeds paid by Connecticut General in 2002 constitute income to petitioner in 2002. Petitioner thus had taxable receipt of the income in 2002. See Gale v. Commissioner, supra; see also Sullivan v. Commissioner, T.C. Memo. 1999-341.

Citibank Interest Income

Gross income means all income from whatever source derived. Sec. 61(a). Under section 61(a)(4), interest is includable in

gross income. Petitioner objected to respondent's assertion that he received taxable interest income of $972 in 2002 on the interest-bearing escrow account with Quadrino & Schwartz. The stipulated schedule of the escrow balance shows that interest of $3,186.49 was earned on the account and was reflected in the February 14, 2005, payment made to petitioner. Respondent asserts that $972 of that amount is attributable to 2002. Petitioner has failed to present any reasonable dispute with respect to respondent's assertion. In these circumstances, respondent was entitled to rely on third-party information. See sec. 6201(d); Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997); Silver v. Commissioner, T.C. Memo. 2005-281. Petitioner also objected to respondent's assertion that petitioner received $15 of taxable interest income for savings bonds in 2002. The earned interest of $972 and $15 in 2002 was deemed admitted pursuant to Rule 90 when petitioner failed to respond to the request for admissions. Therefore, petitioner has taxable interest income of $987 for 2002.

Credits, Exemptions, and Deductions

Petitioner argues that he is entitled to dependency exemptions for his wife and three children under sections 151 and 152 and to the child tax credit under section 24. Petitioner belatedly made these claims and was afforded the opportunity to file a motion to amend the petition; however, the proposed

amended petition that accompanied his motion failed to identify any specific deductions or credits to which petitioner would be entitled.

Mrs. Connors testified that petitioner had three children, one of whom was in China with him.  Her testimony is insufficient to show that petitioner was entitled to a dependency exemption for any of his children under sections 151 and 152, to the child tax credit under section 24, or to any other credits for 2002.  Neither at trial nor in the offer of proof did petitioner present sufficient information concerning custody of his children or respective contributions to their support.  Additionally, although Mrs. Connors testified that she did not work in 2002, her testimony, as well as petitioner's failure to provide any information as to her support, is insufficient to show that petitioner would be entitled to a dependency exemption for her.

Additions to Tax

Respondent determined an addition to tax under section 6651(a)(1) for the year in issue.  Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent.  The addition to tax for failure to file is not imposed if it is shown that the failure to file did not result from willful neglect and was due to reasonable cause.  See United States v. Boyle, 469

U.S. 241, 245 (1985).  To prove reasonable cause, a taxpayer must show that he or she exercised ordinary business care and prudence but nevertheless could not file the return when it was due.  See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Because petitioner failed to present a reasonable explanation for his failure to file and failed to allege any specific facts with respect to the addition to tax, and because liability for the addition to tax was deemed admitted pursuant to Rule 90, respondent's determination with respect to the addition to tax under section 6651(a)(1) is sustained.

Additionally, respondent determined an addition to tax under section 6651(a)(2) for failure to pay tax.  Section 6651(a)(2) provides for an addition to tax of 0.5 percent per month up to 25 percent for failure to pay the amount shown on a return.  This addition to tax, however, applies only in the case where a return has been filed.  See Spurlock v. Commissioner, T.C. Memo. 2003-124; see also Burr v. Commissioner, T.C. Memo. 2002-69, affd. 56 Fed. Appx. 150 (4th Cir. 2003); Heisey v. Commissioner, T.C. Memo. 2002-41, affd. 59 Fed. Appx. 233 (9th Cir. 2003).  Under section 6651(g)(2), a return that the Secretary prepared under section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2).  For these purposes, a section 6020(b)

return, in the context of section 6651(a)(2) and (g)(2), "must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." Spurlock v. Commissioner, supra; see also Cabirac v. Commissioner, 120 T.C. 163, 170-171 (2003). Respondent has satisfied the requirements under sections 6651(a)(2), (g)(2), and 6020(b). Because petitioner has failed to allege any specific facts with respect to the addition to tax, and because liability for the addition to tax was deemed admitted pursuant to Rule 90, the addition to tax under section 6651(a)(2) is sustained.

## Filing Status

Section 1(d) provides that every married individual who does not make a single return jointly with his spouse has a filing status of married filing separately. Petitioner and Mrs. Connors did not file a joint return for 2002, and there is no reliable evidence that they ever intended to file a joint return for 2002. Therefore, petitioner's filing status for 2002 is married filing separately.

We have considered the arguments of the parties that were not specifically addressed in this opinion. Those arguments are either without merit or irrelevant to our decision.

To reflect respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>